WOOLMAN et al., respondents, *v.* GARRINGER et al.,
appellants.

CASE AFFIRMED — *legal and equitable relief in the same action.* The case of *Gallagher* v. *Basey*, *ante*, 457, affirmed. Legal and equitable relief cannot be obtained in the same proceeding, and a judgment for damages for the diversion of water, and which perpetually enjoins parties from using the water, is irregular and void.

WATER — *change of place of use and purpose.* The prior appropriator of water for mining purposes at a certain point can extend his ditch and use the water, to the extent of his appropriation, at any other point for the same or a different purpose.

WATER — *date of appropriation — diligence.* The appropriation of water by parties, who prosecute the work on their ditch with reasonable diligence, dates back to the commencement of the work.

WATER — *notice of change of use by appropriator.* The prior appropriator of water, who posts notices of his appropriation near the stream and immediately constructs his dams and ditches, is not required to give any actual notice to subsequent appropriators of his intention to extend his ditches, and reclaim the waste-water from his mining operations, and use the water at another place.

WATER — *subsequent appropriator — abandonment.* The subsequent appropriator of water, who acquires the privilege of using the waste-water of the prior appropriator, can be deprived of the same at any time, unless the water has been returned into the original channel without any intention of recapture.

*Appeal from the Third District, Lewis and Clarke County.*

THE decree was entered in this action in March, 1871, by WARREN, J. At the trial, Garringer excepted to the following instructions, which were given by the court:

"The plaintiffs are not required to take notice of the intention of the defendants to carry or convey the waters of the said gulch beyond the point specified in the notice, unless such intention was indicated by such acts as would convey to a reasonable person notice of such intention, or actual notice given to them, prior to acquiring any intermediate rights.

"The record notices introduced of defendants' claims to the water in controversy are not notice to plaintiffs by reason of being recorded, and it devolves on defendants to show actual notice of such record, or actual execution of

the work described in it, prior to any intermediate rights plaintiffs, or their predecessors, may have acquired to the water in controversy in order to affect the plaintiffs with such notice.

If the jury believe, from the evidence, that plaintiffs, or their predecessors in interest, were not notified of the defendants' intention to carry the water in controversy out of the natural channel of the stream to some point designated, and that the defendants had done no act sufficient to indicate to a reasonable person such intention, and that the plaintiffs, or their predecessors in interest, took up said water after it was returned to McClellan gulch, and carried and conveyed the same in and upon their ranches for some useful purpose, then said defendants have no right thereafter to so change or divert said water as to deprive the plaintiffs of the use thereof.

If the jury do not believe, from the evidence, that the defendants did such acts as would convey to a reasonable person a notice of their intention to convey the waters of McClellan gulch to such point as would not reach plaintiff's' ditch, then it devolves upon said defendants to show an actual notice to said plaintiffs of their intention so to carry the same, prior to plaintiffs' appropriation.

If the jury believe, from the evidence, that the defendants conveyed the water in controversy to what is known as Union Bar or McClellan gulch, and permitted the same to flow back into said gulch without giving the plaintiffs, or their predecessors in interest, any notice of their intention to carry it elsewhere, and that their acts and works did not indicate to a reasonable person an intention to carry it elsewhere, and that said plaintiffs, or their predecessors in interest, before such notice or acts, appropriated and took possession of the waters so returned to said McClellan gulch, then defendants have no right thereafter to divert said waters from plaintiffs.

If a person appropriates water to be used at a particular point, and there uses it, and then permits it to flow back into its natural channel and go on down its accustomed

course, persons below may appropriate the same so as to make it a vested right, and no subsequent change of the prior appropriation can be made so as to deprive such appropriators of the use of such water.

If the jury believe, from the evidence, that the defendants had no ditch, or survey for a ditch to the stream of water in dispute, and also that they had no notice or marks upon said stream indicating an intention to appropriate it and carry it to a point where it would not flow back into the natural channel of said stream above the point of plaintiff's appropriation, at the time plaintiffs' predecessors in interest made the appropriation of said water, then you will find for the plaintiffs in the number of inches they are entitled to, and such damages as they have proven they have sustained, not exceeding the sum of $5,000.''

The other facts appear in the opinion.

W. F. SANDERS, W. E. CULLEN and G. G. SYMES, for appellants.

The prior appropriator and owner of a ditch has the exclusive control and right of enjoyment of the water diverted therein ; and he may change the place of use at pleasure without forfeiting the right. *Maeris* v. *Bicknell*, 7 Cal. 261 ; He can change the use of same. *Davis* v. *Gale*, 32 Cal. 26.

Appropriation and use and nonuse are the tests of right, and place and character are not. After appropriation a party is entitled to use the amount appropriated at any place where he may convey it for a useful purpose. *Davis* v. *Gale*, 32 Cal. 34 ; *Weaver* v. *Eureka L. Co.*, 15 id. 273 ; *Kidd* v. *Laird*, id. 161.

A party cannot acquire rights to waste water as against the first user. He may make use of the water, but the first appropriator can assume possession of same at any time. *Doughty* v. *Creary*, 30 Cal. 290.

Survey of ground, planting stakes, giving notice and continually working on the ditch are possession, and when the ditch is completed the appropriation relates back to the date of commencement. *Conger* v. *Weaver*, 6 Cal. 548 ; *Kimball* v. *Gearheart*, 12 id. 27.

VOL. I — 68.

Appellants put up notice claiming one thousand inches of water for mining purposes and recorded it with county recorder, and worked on their ditch until completion. Where did respondents acquire any right to use any portion of the one thousand inches?

The court erred in its instructions, which were to the effect that when water is appropriated for mining purposes and used at one place, it cannot be conveyed to another place if some person has been using the waste water from the mining operations. The authorities already cited show that this was error.

The court also erred in its instruction, requiring the prior appropriator to give notice to the party using waste water that he could not always use it.

The proceedings in this case are irregular. The complaint consolidates actions at law and in equity, and asks for damages and an injunction. The judgment is for damages and a perpetual injunction, and is founded on the verdict of a jury. *Kleinschmidt* v. *Dunphy*, 11 Wall. (U. S.) 610 ; *Orchard* v. *Hudges*, 1 Wall. (U. S.) 76 ; *Benner* v. *Porter*, 9 How. 242 ; *Noonan* v. *Lee*, 2 Black, 499. This suit was commenced on the common-law side of the court for damages, and there was no jurisdiction to grant equitable relief. The action was tried by a jury and an injunction was granted in effect by the jury. The case should be reversed for these irregularities. *Lyon* v. *Woodman*, 3d Dist. Utah ; *Ferm* v. *Holme*, 21 How. (U. S.) 481.

SHOBER & LOWRY and E. W. TOOLE, for respondents.

The case was tried as requested by all parties. Instructions were given by the court at the instance of appellants as well as respondents. No objection was taken by appellants to the manner and form of the action, or the manner and form of the trial. The case was tried as authorized by the Practice Act.

The only questions presented by the record are these : Do the general verdict and special findings sustain the judgment? Did the court err in giving or refusing instructions

to the jury? The judgment is correct. The instructions cover every material proposition.

The extent of the rights acquired by respondent, to which subsequently acquired rights must be subordinate, was one of fact for the jury. *Nevada W. Co.* v. *Powell*, 34 Cal. 109.

When a right has vested in the subsequent appropriator, the prior appropriator cannot extend his claim, or change the means of his appropriation to the prejudice of the second appropriator. Ang. on Water-courses, 237; *Butte C. & D. Co.* v. *Vaughn*, 11 Cal. 153; *Kidd* v. *Laird*, 15 id. 161; *Kimball* v. *Gearheart*, 12 id. 27; *Butte T. M. Co.* v. *Morgan*, 19 id. 616; *Hill* v. *Smith*, 27 id. 476; *McDonald* v. *Askew*, 29 id. 290; *Nevada W. Co.* v. *Powell*, 34 id. 109.

Appellants cannot raise the question of the improper blending of actions in this court for the first time. The legal rights were determined by the jury. The decree and injunction emanate from the court. *Toombs* v. *Hornbuckle, ante,* p. 286.

MURPHY, J. This is an appeal from the judgment-roll, in an action for damages, for the diversion of water, and for an injunction, united in the same complaint, tried to a jury, and judgment for damages and a perpetual injunction.

The jury returned a general verdict for $250 damages, in favor of the plaintiff, and, also, findings on the special issues submitted.

Thereupon, both parties filed motions—the plaintiffs for judgment and decree, and the defendants to set aside the general verdict, and for judgment upon the special findings.

Both motions were heard together, and the defendants' overruled, and the plaintiffs' sustained, and, accordingly, judgment based upon the general verdict for $250 damages rendered, and a decree, based upon the pleadings, general verdict and special findings, for perpetual injunction entered, in favor of the plaintiffs and against the defendants.

To this action of the court, as also to the ruling out of certain testimony, and the refusal and giving certain instruction to the jury, defendants, by counsel, excepted and appealed to this court.

The first inquiry that naturally and properly arises here is, as to the regularity and legality of the proceedings in the court below, and involves the question of jurisdiction.

The proposition, that law and equity cannot be blended in the same suit or action, under our organic act, was elaborately discussed and definitely settled in the case of *Gallagher et al.* v. *Basey et al.*, by this court, at its January term, 1872.

Upon the strength of that decision and the authorities upon which it is based, and the general principles of law governing, we hold:

1. That the organic act, in clothing the supreme and district courts of the Territory with both common-law and chancery jurisdiction, confers them as separate powers and distinct jurisdictions.

2. That in judicial proceedings in pursuance thereof, the well-known and recognized distinctions between law and equity must be maintained, and the peculiar and characteristic features of these different jurisdictions preserved, and they exercised separately and not together.

3. That it is within the province of the local statute to regulate or limit and control the forms of proceedings, in actions at law and suits in equity, but not within the scope of its authority to destroy or blend together, in the same proceeding, the two jurisdictions.

4. That actions at law, where legal remedy is demanded, must be tried as at law, and the judgment based upon the verdict of a jury, or the findings of the court sitting in the capacity of a jury.

5. That suits in equity, where equitable relief is prayed, or where an equitable defense is set up to a claim at law must be tried as in a court of chancery, and the decree emanate from the judge sitting as a chancellor.

In the case at bar both legal and equitable relief is sought, and both the law and chancery powers of the court are invoked.

In the same complaint both damages at law and an injunction enjoining in equity are asked.

While it purports to be an action brought on the law side of the court for damages, yet it seeks relief by restraint on the equity or chancery side also.

And in this condition it was tried to a jury as at law, and a judgment rendered upon the general verdict of a jury, for $250 damages for the plaintiffs, and, at the same time and in the same connection, a decree entered perpetually enjoining and restraining the defendants.

The court could only consistently and lawfully exercise but one of these separate functions or distinct jurisdictions in the same proceeding, and that only when properly invoked.

The proceedings are neither in conformity to the established principles and rules governing in law or in equity, but seem to partake of the nature of both, and are irregular and illegal throughout.

And for these reasons, if there were no others, the case will have to be reversed.

And here the matter might rest were it not for the fact that another and very important question presents itself, which it is considered advisable to notice in this connection.

It relates to the effect on the right of the appropriator of water of a change in the *place* of *use* of the water appropriated.

From the record it appears that on the 4th of June, 1866, the defendants and their predecessors in interest, by means of a dam, ditch and a posted notice at the point of appropriation, and about four miles above the mouth of the creek, did appropriate one thousand inches of the water of McClelland creek, in Jefferson county, Montana Territory, for mining purposes.

And it also appears, that afterward, in September of the same year, plaintiffs, by means of a dam and ditch, about a mile below the point of defendants' appropriation, did likewise appropriate two hundred inches of the water of said creek.

And it further appears that defendants, by means of their said ditch, from the 30th day of June to the 4th day of July, 1870, did divert the water of the creek aforesaid from the head of and away from the plaintiffs' ditch.

And of these facts there is no controversy, and upon the appropriations, as above stated, the parties base their respective claims.

The record also shows that "there was no proof introduced tending to show," "nor" that "it was claimed on the trial that either right of either party had been abandoned." And further, that "it was proven and conceded that the defendants' appropriation of the water was prior, in point of time, to the plaintiffs', to the extent of one thousand inches; but the plaintiffs claimed that, as they, the defendants and grantors, had not carried the water away, or given notice of their intent to carry it away from the head of plaintiffs' ditch, until after plaintiffs' grantors' appropriation, that, therefore, they could not thereafter do so."

And this is the proposition upon which the plaintiffs rested their case, and which we propose to briefly consider for the purpose, if possible, of settling the law in that regard so far as this Territory is concerned.

The case seems to have been tried and determined upon the theory that the water was not carried away from the point where the plaintiffs' ditch tapped the stream, or that there was no actual *notice* brought home to plaintiffs of such intention to carry it away before their subsequent appropriation.

The facts are, water was not carried away till after the dam and ditch of plaintiffs were constructed, nor does it appear that any notice, other than that of the general appropriation for mining purposes, was even given, except it be such as the acts of the defendants themselves might have indicated to the mind of a reasonable person. And it is not claimed that they did not follow up the construction of their ditch with proper diligence.

We are constrained to believe that all this was not necessary, and that the defendants had the right, under the cir-

cumstances, to change the place of use and divert the water to any other point, to the extent of their appropriation.

In the case of *Maeris* v. *Bicknell*, 7 Cal. 261, the court said: "The next question which arises in this case is, whether a party who makes a prior appropriation of water can change the *place* of its use without losing that priority, as against those whose rights have attached before the change. This question, we think, can admit of but one answer. It would seem clear that the mere change in the *use* of water from one mining *locality* to another, by the extension of the ditch, or by the construction of branches of the same ditch, would by no means affect the right of the party. It would destroy the utility of such works were any other rule adopted."

And in the case of *Davis* v. *Gale*, 32 Cal. 26, this rule is not only confirmed, but the court goes still further and lays down another equally wise and important rule, that a prior appropriator may even change the *use* for which he first appropriated the water without losing his right of priority, as against a party whose subsequent appropriation was made before the change took place.

In the language of the learned judge who delivered the opinion of the court in that case, "a party acquires a right to a *given quantity* of water by appropriation and use, and he loses that right by nonuse or abandonment. Appropriation, use and nonuse are the tests of his right, and place of use and character of use are not. When he has made his appropriation he becomes entitled to the use of the *quantity* which he has appropriated at *any place* where he may choose to convey it, and for *any useful* and *beneficial purpose* to which he may choose to apply it. Any other rule would lead to endless complications and most materially impair the value of water rights and privileges.

"Thus, a party may appropriate water, in the first instance, for the purpose of placer mining, and when his ground is worked out, or he finds it will not pay, or that ground further on is better, he may leave the former and carry the water to the latter without losing his priority.

"Or he may find paying quartz, and change the use of his water from fluming or sluicing into a motive power for crushing his quartz, without forfeiting his prior right.

"And so he may in the first place tap a stream for the purpose of running a saw-mill, and after the timber is exhausted, or he finds that a grist or any other kind of a mill will be more profitable, he may change the use from one purpose to the other and to a different point, if necessary, without surrendering or impairing his right of priority.

"These water rights are frequently secured by and attended with the expenditure of large sums of money, and to limit them to the *particular place* or the *special purpose* in view of which they were first sought and acquired, by such a harsh and arbitrary rule of law, would be manifestly unjust and seriously deleterious in its results, and greatly embarrass and retard the development of the resources of the country."

We agree with the view expressed in the case of *The Union Water Company* v. *Crary*, 25 Cal. 509, that the right of the first appropriator may be lost in whole or in part by adverse possession, under the statute of limitations. But in this case no adverse possession is contended for nor is the statute of limitations pleaded or relied upon by the plaintiffs.

And from the record it appears that the defendants pursued the work on their ditch, which is some twenty-seven miles long and cost about $50,000, with such reasonable diligence as would undoubtedly make the appropriation date and relate back to the commencement of the same, even were abandonment claimed and insisted upon.

The notices posted on the stream, of the appropriation of so much water for general mining purposes, and the immediate entering upon the continued prosecution of the construction of the dam and ditch, and its extension or branches, were sufficient to put the plaintiffs on their guard and to apprise them of the prior appropriation of the defendants and of their superior rights in the premises. And from these facts they were bound to take and were charged

with notice of the defendants' prior appropriation, and if they then proceeded it was at their own option and peril.

Nor were the defendants required to take notice of any subsequent appropriation by the plaintiffs, nor to give notice that they intended to reclaim the waste water from their mining operations, and that plaintiffs could not always use the same.

The plaintiffs could acquire no other than a mere privilege or right to the use of the waste water, or at most, but a secondary and subordinate right to that of the first appropriators, and only such as was liable to be determined by their action at any time, unless the water had been turned back into the original channel after it had been used and answered the purposes of the first appropriators, without any intention of recapture, and thereby became *publice juris* and subject to appropriation by any one, which does not appear from the record ; but clearly the contrary it shows, and was claimed on the trial and proof offered to that effect.

*The case is reversed and remanded.*