ALBERT H. WOOD, RESPONDENT, *v.* KATE LOWNEY ET AL., APPELLANTS.

[Submitted October 20, 1897. Decided November 1, 1897.]

*Water Rights— Oral Transfer— Abandonment.*

1.  WATER RIGHT—*Oral Transfer.*—One who has settled upon and is in possession of public lands of the United States, may convey his right in the same together with a water right appurtenant thereto, orally and with or without consideration, to one who takes possession of the same.
2.  SAME—*Abandonment.*—A settler upon public lands, for which he had acquired a water right, testified that "he let his brother have it if he would prove up on it," that his brother took possession of the land, and lived upon it until he "proved up," that "when he turned the ranch over to his brother, he did not turn over the water right at the same time; that he told him the water was taken out for the land and went with it." *Held,* that the evidence proved a valid oral transfer, and not an abandonment of the land and water right.

*Appeal from District Court, Ravalli County. Frank H. Woody, Judge.*

ACTION by Albert H. Wood against Kate Lowney, C. C. Lowney, and Cornelius Harrington. Plaintiff obtained judgment. Defendants appeal. Reversed.

Statement of the case by the justice delivering the opinion.

This action was brought by plaintiff to determine the right to the use of waters of the South Fork of Burnt Fork creek, in Ravalli county. Plaintiff averred his right to the use of 200 inches of the waters of said creek through an appropriation by his predecessors in interest, made in the spring of 1883.

The defendant Harrington averred that he owned certain land, and denied plaintiff's alleged appropriation in 1883, and averred that in May, 1882, his predecessors, in interest appropriated 576 inches of the waters of said creek for irrigating purposes, and also averred a continual use of the same since the date of appropriation, and that defendants had a right to the use of 288 inches of the waters of said creek.

The defendant Kate Lowney also denied the material allegations of plaintiff's complaint, and alleged that she was the owner of 160 acres of land requiring irrigation, and of the right to the use of 288 inches of the waters of said creek through appropriations made by her predecessors in interest in May, 1882. She and her co-defendant Harrington alleged that their predecessors in interest reappropriated the waters about June 1, 1885, said appropriation evidently having been made under the statutes of 1885.

Defendant C. C. Lowney also denied the material allegations of the complaint, but set up no affirmative rights in himself.

The plaintiff, by replication, denied all the new matter set up in the defendants' answers, except as to the ownership of the lands.

The case was tried to a jury, who found that the plaintiff, by prior appropriation, had a right to the use of the waters of the south Fork of Burnt Fork creek to the extent of 165 inches. Judgment and decree were entered accordingly. The defendants moved for a new trial, which motion was denied. From the judgment and order overruling their motion, defendants appeal.

*Bickford, Stiff & Hershey*, for Appellants.

*Geo. W. Reeves*, for Respondent.

HUNT, J.—Our labors in the case before us would have been somewhat simplified, and, indeed, would be generally simplified in water right cases, by having incorporated into the record a diagram of the situation of the ditches over which the litigation has arisen. Witnesses upon the trial of such causes are apt to presume that the jurors and the trial judge have some personal knowledge of the lay of the land, and of the ditches conducting water thereto. This assumption is perhaps often well taken as applied to jurymen, who frequently know the more important ditches and water claims in in their counties, and therefore easily comprehend the full meaning of a witness when he refers to a ditch by the local name given it in the neighborhood, and it may be that the trial judge is well enough acquainted with the section to readily understand the meaning of any such reference; but when the case comes to the appellate court, and the testimony is, for instance, that "on the north side the wheat crop could not be irrigated by the McLaren ditch," and there is no map to convey any idea of north, south, east or west, or to illustrate where the McLaren ditch is, and no lucid explanation of its situation, the task of locating it becomes laborious, and can only be performed by deductions from scattering statements of the several witnesses who referred to the ditch as if every one knew of its owner, course and size. We do not mean to apply these remarks particularly to one side of this case, but are prompted to make them by the example afforded by this record of a practice which we hope will hereafter be avoided.

On the trial, plaintiff's evidence tended to show that in April and May, 1883, his predecessors in interest constructed an irrigating ditch of a capacity of 165 inches of water from a point at least a quarter of a mile above plaintiff's land to the land now owned by plaintiff, and cultivated about 12 acres by means of said ditch in the first year of said appropriation, and that ever since 1883 the land has been irrigated by means of said ditch and laterals therefrom until 1895, when defendants interfered with the water. Plaintiff then rested.

The defendants introduced a witness named Strout, who

said that in May, 1882, he and James Stuart built a ditch from the South Fork of Burnt Fork creek, appropriating 576 inches of water; that the water went down across Hunt's place, and came down to the witness' place; that he thought his place was on government land; that Stuart used his water; that Harrington now occupies that piece of land; that he used water first on the Crane and Young ranches, as he intended to use it, and continuously used it on the Crane ranch until witness sold out; that the Young ranch was on the Indian land; that, as nearly as he could tell, the water had been used on the Harrington ranch always since 1882; that he sold a quarter interest in the right to the water to Crane; that, from 1882 until he sold out, he always used the water on the Crane ranch; that, when he located the water, the land now occupied by Harrington was known as the ''Ed Buker Land,'' then as the ''Stuart Ranch,'' then as the ''Harrington Place;'' that the Lowney land is the Hunt place, but that none of the waters appropriated were intended for that land at the time of the appropriation; that witness sold to Crane, who sold to Hunt, but that in 1884 there was no ditch there that he knew of, and that he thinks the land was surveyed in 1884.

J. B. Stuart, who located the ditch with Strout in 1882, testified that he owned the present Harrington ranch, having bought out Buker's improvements thereon in 1880; that he claimed 160 acres; that he never filed on the land; that in 1882 ''his brother came out, and he let him have it if he would prove up on it;'' that the water was located for use on that land in 1882, and was used ever afterwards; that, when he transferred to his brother William, he had no deed to the property, as he never had filed upon it; and that he gave no deed to William, but that William took possession that fall, and lived there until he proved up; that William never raised a crop there, but that witness raised a crop on part of the Harrington ranch in 1884; that, when he turned over the ranch to his brother William, he did not ''turn over the water right at the same time; that he told him the water was taken out in 1882 for the land, and went with it.''

On recross-examination the witness stated that he never had given his brother any writing or deed at all for the improvements and water right or the land.

Thereupon counsel for plaintiff asked the court to withdraw from the consideration of the jury the testimony of J. B. Stuart detailing the transfer of the water right from him to his brother, because it was improper to show a right in William Stuart to the water right, and was not a conveyance of a water right, so as to enable William Stuart to date his appropriation back to the time when J. B. Stuart made the appropriation of the water, and was not such a transfer of a water right as was authorized and required by law. The court sustained the objection, and, upon a similar motion, struck out of the case and withdrew from the consideration of the jury the testimony of the witness Strout concerning the sale of his interest in the water right to Crane, as testified to by Strout.

We believe that these rulings of the court were erroneous, and that, on account of them, the judgment must be set aside, and the cause remanded to the District Court for a new trial.

In *McDonald* v. *Lannen,* 19 Mont. 78, 47 Pac. 648, it was decided that a squatter on the public domain could transfer the possession of his claim, including the water right appurtenant thereto, and the improvements thereon verbally, and that the transferee who is put in possession becomes his successor in interest. That decision is directly applicable to the case before us, as demonstrating the error of the District Court in excluding the evidence of the verbal transfers from Stuart to his brother, and from Strout to his successors. The respondent, however, says that the doctrine of the McDonald-Lannen case is controlling only where there has been a verbal sale of the improvements and water rights on unsurveyed ground. Although we think the evidence in this record tends strongly to show that the lands transferred by verbal sale by Stuart and Strout were unsurveyed at the times of such transfers, we fail to see wherein there is any reason for the distinction respondent draws. If the claimant and appropriator of land

and water rights is a settler in good faith upon the public
lands of the United States, claiming by pre-emption or home-
stead right initiated by occupancy and by filing, he has a right
of possession, and a possession to be protected against tres-
passers, sufficient also to appropriate water for the benefit of
his claim, with power to transfer such possession and any
water right appropriated for the benefit of the land claimed to
another who may take possession. And, if such a settler does
verbally sell and transfer such possession to a successor, such
a successor, if put in possession, becomes a successor in inter-
est, and may avail himself of the rights his predecessor had as
an appropriator of water.

It is argued that J. B. Stuart abandoned the land in his
brother's interest. But where is the evidence of such an
abandonment other than the relinquishment of a personal in-
tention on J. B. Stuart's part to acquire title to the land for
himself ? His own statement to his brother that the water
went with the land when he told him he could have the land
if he proved up on it, his own subsequent cultivation of it,
and later on, when William acquired title thereto, his pur-
chase of it, all, as appeared on the trial, disclose not alone
that he had no intent to abandon the place, but every purpose
and wish to hold on to the land and water rights he had, and
to transfer the same to his brother. The transfer may not
have been in good faith under the laws of the United States,—
that is, there may have been an agreement between William
and James concerning the transfer of the property to James
when acquired by William; but William took possession of
the place, and while in such possession the water was used
from the water appropriated by James to irrigate the land.
But there is no suggestion of fraud throughout the case, and
we regard the evidence as tending to show a valid transfer of
James Stuart's rights to his brother.

Stress is laid upon the point that the evidence fails to show
any consideration for the transfer from James to William
Stuart. That, as intimated before, might be a circumstance
tending to show a collusive agreement between the brothers to

defeat the laws of the United States, but it does not prove that James Stuart had no desire that his brother should acquire the land and water rights appurtenant thereto. There could be no abandonment by James to William, or for a consideration. James' act should be regarded as in the nature of a gift from the one brother to the other. (*Middle Creek Ditch Co.* v. *Henry,* 15 Mont. 558, 39 Pac. 1054.) But, whether a gift or a sale (no fraud entering into the case at all), of what concern is it to the plaintiff, unless he can show a prior right of appropriation in himself, or an abandonment by defendants or their predecessors?

We find it unnecessary to extend the discussion. To do so is to repeat the doctrine of the McDonald-Lannen case. We are constrained to hold that the lower court ought to have considered the evidence excluded, and for failure to do so, appellant's rights were prejudiced, and a new trial must be had.

*Reversed and Remanded.*

PEMBERTON, C. J., and BUCK, J., concur.