WRIGHT, RESPONDENT, *v.* CRUSE, APPELLANT.

(No. 2,522.)

(Submitted April 7, 1908.   Decided May 4, 1908.)

[95 Pac. 370.]

*Water Rights—Appropriation—Prior Right—Doctrine of Relation.*

1. Prior to the enactment of the statute regulating the appropriation of water, plaintiff's predecessor began the construction of a ditch on October 1, 1882. Defendant's grantors commenced two ditches on September 1 and 5, 1882, respectively. Both prosecuted the work with reasonable diligence to completion and the actual using of water, plaintiff's ditch, however, being completed before either of defendant's. *Held,* under the doctrine of "relation back," that construction of the ditches of defendant having been begun before plaintiff's ditch, the former had the prior right, even though the ditch of the latter was completed first.

*Appeal from District Court, Fergus County; E. K. Cheadle, Judge.*

ACTION by George F. Wright against Thomas Cruse to adjudicate water rights. From a judgment establishing priorities and an order denying a new trial, defendant appeals. Reversed, with directions to modify judgment.

*Mr. T. J. Walsh,* for Appellant.

*Mr. M. S. Gunn,* and *Mr. O. W. Belden,* for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

This is a suit involving the right to the use of the waters of Flatwillow creek, in Fergus county. The respondent claims under an appropriation alleged to have been made November 10, 1881, through a ditch known as the "Samuel Welch ditch." The appellant claims under what is called the "Farm" or "lower Durfee creek" ditch, alleged to date from June 1, 1882,

taken from Durfee creek, a tributary of Flatwillow creek; the South Fork ditch, of date August 1, 1882, from South Fork, another tributary of Flatwillow; the Half-breed ditch, of date September 1, 1882; the upper Durfee creek ditch, another ditch taken from Durfee creek, under date April 1, 1883; the Lucky Ford ditch, under date April 1, 1883; the Gallagher ditch, under date of July 1, 1883; and the Judd & Hackshaw ditch, under date August 1, 1884. Appellant also claims, in his answer, the right to the use of all of the waters of Flatwillow creek, since the year 1888, by adverse possession and user.

The court by its decree gave the plaintiff a right to 222 inches of water, of date October 25, 1882, and found the defendant's rights to be as follows: The lower Durfee creek right, 81 inches, of date June 1, 1882; the upper Durfee creek right, 325 inches, of date May 15, 1883; the Gallagher ditch right, 200 inches, of date July 1, 1883; the Half-breed ditch right, 309 inches, of date September 1, 1883; the South Fork ditch right, 211 inches, dated May 1, 1884; the Lucky Ford ditch right, 208 inches, dated May 1, 1884; and one other right of 195 inches, not designated by name, dated May 1, 1885. It will be observed that the court found that the defendant's lower Durfee creek right was prior to the Samuel Welch right of the plaintiff, and that all other rights of the defendant were subsequent thereto. The court made no finding on the question of adverse user. Defendant appeals from the judgment and an order denying a new trial.

Prior to the trial the defendant asked leave to file an amended answer, setting forth, in addition to the issues already tendered, that in the year 1890 the Willowdale Ranch Company prosecuted to judgment an action against the defendant Cruse, similar to the present suit, claiming a priority of right to the waters of Flatwillow creek, basing its claims upon the Gallagher ditch (the right to which, it was asserted, was afterward purchased by Cruse), and a certain Reeves ditch, alleged to be identical with the Samuel Welch ditch by reason

of the taking out of which the plaintiff claims priority in this action; that Cruse defended by asserting a priority by virtue of the ditches referred to in his answer in this case, and others, and that a decree was rendered establishing the rights of the parties as follows: (1) The lower Durfee creek ditch, June, 1882, 81 inches; (2) the South Fork ditch, September 1, 1882, 300 inches; (3) the Half-breed ditch, September 1, 1882, 700 inches; (4) the Reeves ditch, belonging to the Willowdale Ranch Company, September 21, 1882, 320 inches; (5) the upper Durfee creek ditch, April, 1883, 400 inches; (6) the Lucky Ford ditch, April 15, 1883, 300 inches; (7) the Gallagher ditch, belonging to the Willowdale Ranch Company, May 29, 1883, 600 inches; (8) the Judd & Hackshaw ditch, August 12, 1884, 200 inches; (9) the Roberts ditch, January 5, 1885, 160 inches; (10) the Gray & Courtwright ditch, January 2, 1886, 1,000 inches; (11) the Doubelle & Rhole ditch, April 22, 1886, 1,000 inches; (12) the Parmelee ditch, October 15, 1887, 200 inches; (13) the Kelsey ditch, October 20, 1887, 200 inches; that all of these water rights were adjudged to belong to Cruse, save the ones designated as the property of the Willowdale Ranch Company. The court refused to allow the amended answer to be filed, and that ruling is alleged to have been error. But the decree was afterward introduced in evidence without objection, and, in the view we take of the case, the action of the court in refusing to allow the amendment becomes immaterial. The matters above recited were pleaded in the proposed amended answer by way of estoppel, but in the reply brief of the appellant it is set forth that the primary purpose with which the decree was offered in evidence was in support of the claim of adverse user to establish that the appellant used the water, claiming the highest and best right to do so as against all other appropriators. This being the case, the appellant had the benefit of the decree. In this connection counsel for appellant say in their reply brief: "In that claim (that is, the claim of Cruse that he had the highest and best right), the predecessor in interest of respondent obviously acquiesced un-

til his death, and for a period far beyond that of the statute of limitations, and until many of the most important witnesses by whom the appellant might establish his rights beyond question are dead.''

It is fair to say that the appellant made rather a strong showing of adverse user, and that the testimony offered by the respondent on the subject was general in character and not very definite as to how and when the continued adverse user testified to by appellant's witnesses was interrupted. In connection with the claim of adverse user we are asked to consider the decree in the *Willowdale Ranch Company Case.* The record in this case shows that many of the witnesses who ought to have the best knowledge as to when the Cruse rights were in fact initiated have died since the trial of that case. It will be noticed that in the Willowdale Ranch Company decree the so-called South Fork and Half-breed rights of the appellant are both dated September 1, 1882, while in the decree we have under consideration they are dated September 1, 1883, and May 1, 1884, respectively. The testimony shows that either one of these ditches is of sufficient capacity to carry all of the water in the creek at low-water season, and we can very well understand how Cruse, a layman, having this Willowdale Ranch Company decree in his favor, might assume that that decree correctly fixed the dates of the respective appropriations, even though it was not *res adjudicata* as to the plaintiff Wright. However, the district court is presumed to have found the issue as to adverse user against the appellant, and as there was some conflicting testimony on the subject, we are not disposed to interfere with that branch of the case.

The foregoing contention of the appellant being disposed of, leaves but one other question in the case, and that is this: Was the court right in holding that the defendant's South Fork and Half-breed rights were subsequent in time to that of the plaintiff? These water-right cases are peculiar in their nature, in that the parties are obliged to depend to so great an extent upon the memories of those who came to a new country in the

early days. It is true that these water rights were taken·out
at a time long subsequent to the dates of the first settlements
in the state, but persons who went to the Flatwillow country
in the early 80's were none the less pioneers there. This rec-
ord seems to disclose the fact that there existed in the minds of
those who first went upon Flatwillow creek for the purpose of
locating, a sort of general plan to take up large areas of the
public lands, together with the water necessary to irrigate the
ground, so that they might afterward dispose of the same to
the larger land owners. Almost every person whose name is
mentioned in the testimony located a claim and took out a
ditch. We have carefully examined the testimony offered by
the plaintiff, and feel satisfied that his predecessor, Samuel
Welch, began the construction of the so-called "Welch ditch"
not later than October 1, 1882, and prosecuted the work with
reasonable diligence until water was finally used through and
by means of the same. On the part of the appellant, Cruse,
testimony was produced, equally convincing to our minds with
that relating to the Welch ditch, that the predecessors in in-
terest of the appellant began the construction of the so-called
"South Fork ditch" about September 1, 1882, and the con-
struction of the so-called "Half-breed ditch" about Septem-
ber 5, 1882, and prosecuted the work with reasonable diligence
to completion and the actual using of water. The evidence
also appears to justify the conclusion that the Welch ditch was
completed before either of the other ditches was finished. The
testimony is voluminous, covering almost 1,000 printed pages.
We have examined it with great care and see no good reason
for quoting it here. There are contradictions of the testimony
offered by both parties. Many mistakes and inaccuracies are
apparent on both sides, but there is no reason to believe that
any witness willfully testified falsely.

These water rights were initiated a quarter of a century ago,
and there is occasion for little wonder that the witnesses should
not agree in their memories as to details. Nor is it of very
great moment, when the main facts are as clearly established

as they appear to us to be in this case. All of these three appropriations were made before the enactment of our statute regulating the appropriation of water. Therefore, as both parties were in the same situation, the case of *Woolman* v. *Garringer*, 1 Mont. 535, is directly in point, and the doctrine of "relation back," as therein announced, should have been applied. This theory of the case was evidently not urged upon or considered by the learned district judge, if, indeed, it was presented to him at all. But it was energetically argued and is earnestly relied upon in this court, and we shall apply the doctrine. In the case of *Woolman* v. *Garringer*, *supra*, the court said: "From the record it appears that the defendants pursued the work on their ditch * * * with such reasonable diligence as would undoubtedly make the appropriation date and relate back to the commencement of the same." In the case of *Murray* v. *Tingley*, 20 Mont. 260, 50 Pac. 723, the court, speaking through the late Justice Buck, used this language: "For years before the statute (regulating appropriation of water) was enacted the rule of law was 'that the appropriation of water by persons who prosecute the work on their ditch with reasonable diligence dates back to the commencement of the work.' Therefore, as between two persons digging ditches at the same time, and prosecuting work thereon, with reasonable diligence, to completion, the one who first began work had the prior right, even though the other had completed his first. This was the doctrine of 'relation back.'"

If it be urged that the trial court impliedly found that plaintiff's predecessor prosecuted his work with reasonable diligence to completion, and that defendant's predecessors did not, we may say, in view of what has heretofore been said as to the theory upon which the case was decided below, that while we do not believe the court intended to so find, the latter finding would not be justified by the evidence.

The district court of Fergus county is directed to modify its judgment by dating appellant's South Fork right September 1, 1882, and his Half-breed right September 5, 1882, both prior

in time and right to the Welch right of the respondent, and as so modified the judgment and the order denying a new trial will stand affirmed.   Appellant shall recover his costs in this court.

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

Rehearing denied May 26, 1908.