GILCREST ET AL., APPELLANTS, *v.* BOWEN ET AL., RESPOND-
ENTS.

(No. 7,073.)

(Submitted May 25, 1933. Decided July 15, 1933.)

[24 Pac. (2d) 141.]

46

*Messrs. Belden & DeKalb,* for Appellants, submitted an original and a supplemental brief; *Mr. O. W. Belden* argued the cause orally.

*Messrs. Ayers & Ayers* and *Mr. Wm. M. Blackford,* for Respondents, submitted an original and a reply brief; *Mr. Blackford* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiffs, F. H. and Clementine V. Gilcrest, instituted suit to enjoin the defendant R. E. Bowen from interfering with their use of water from Antelope Creek, a tributary of Judith River. By pleading and proof they established their right to the use of 160 miner's inches of such water by appropriation made on October 20, 1883.

The defendant answered claiming a right, prior in time and use, by mesne conveyance from one John Croke, who is alleged to have appropriated 200 miner's inches of the waters of Antelope Creek on June 9, 1882.

Issue being joined, a trial was had which resulted in a decree in favor of the defendant, from which the plaintiffs have appealed.

The question presented is as to the sufficiency of the evidence to support the court's findings of fact from which the conclusion is drawn that "R. E. Bowen is entitled to the prior use of 172 miner's inches. * * * of the waters of the south fork * * * of Antelope Creek * * * appropriated and diverted on or after the 6th day of June, 1882, and prior to the 20th day of October, 1883."

The plaintiff's right was established by competent proof and in accordance with a decree fixing and terminating many rights from the Judith River and its tributaries. This decree was entered in 1909, but the defendant was not a party to that suit.

Defendant's proof on the disputed question is substantially as follows: The south fork of Antelope Creek is a small stream which has its source in the mountains to the south of the ranch now owned by the defendant, and flows almost due north through the Bowen ranch in sections 35, 26 and 23, township 13 north, range 13 east, and then through the Gilcrest ranch in sections 23, 13, 14 and 12. The valley of the stream is narrow—not more than a quarter of a mile wide—and flanked by high hills and benches.

In the early eighties John Croke fenced this little valley from a point which, by government survey of 1891, proved to be in the southern part of section 35, above, to a point in section 26, and built a house thereon. On December 2, 1882, Croke filed in Meagher county, in which the land is situated, a declaration that he "claims to have a valid right to the occupation and possession of that certain tract of land supposed to be: The Northeast quarter of the southeast quarter and the east half of the northeast quarter of section Thirty-five; the southeast quarter of the southeast quarter of section Twenty-six; in Township Thirteen North of Range Thirteen East." At the same time he filed notice that he "claimed" 200 inches of the waters of Antelope Creek "diverted from the channel * * * on June 9, 1882, at a point in Section 2 Tp. 12 N. of R. 14 E. * * * to be used for irrigating and other useful purposes." A dam in the creek and two ditches, following the east and west fences, were seen on the land in the fall of 1884, at which time, according to one Ralph Wright, the ditches had the appearance of being two years old, and had been used that year, with laterals therefrom, for the irrigation of 18 to 20 acres of grain.

No proof was adduced as to the use in the all-important years of 1882 and 1883; in lieu thereof the defendant offered in evi-

dence a copy of a "deposition" certified by the Assistant Commissioner of the General Land Office at Washington to have been filed March · 3, 1891, as a part of Bowen's proof on a desert land entry, and signed "Frederick R. Warren," in which the deponent declares that he resides on Antelope Creek and that, from that creek, by purchase and usage, the claimant entryman "owns or controls or has a clear right to sufficient water to permanently" irrigate the lands. This certificate had not arrived at the time of the trial and, on request of defendant, the case was continued for the sole purpose of its reception. On receipt of the certificate the court again convened and, on objection to its introduction, it was marked as an exhibit, but the court "reserved" its ruling. Defendant then requested a reopening of the case for the reception of the testimony of a witness discovered after the former closing of the case; on objection the court announced, "The ruling on that will be held up, to be made later, as to the admissibility of it."

One James Calicoat then testified that in 1901 or 1902 he was told by Warren, then the owner of the Gilcrest ranch, that he could get water for the irrigation of certain claims from Antelope Creek; that he commenced to survey for a ditch but was interrupted by the occupant of the Croke place. According to the witness, he then returned to Warren and inquired whether he (Warren) owned the first right on the creek, to which Warren replied that he did not, that "it belongs to the Reiley ranch."

Proof of use on approximately 80 acres of the Croke land was adduced as to 1885 and 1886; the record is silent as to 1887 and 1888, but by more or less satisfactory evidence use was shown from 1889 to the date of trial.

Bowen claims the disputed right by virtue of the following circumstances: John Croke died in 1888 and his estate was probated; the petition for letters of administration lists 30 head of horses, 13 head of cattle, wagons, harness, 1,300 bushels · of oats, 100 bushels of wheat, 75 tons of hay, and sundry articles, of a value not exceeding $3,000. The "inventory and

appraisement," however, list and appraise but a cabin, sheds, fencing and "water right and ditches [and other personal property]," the items within quotation marks being valued at but $100. On petition for the sale of the property of the estate, the court ordered the designated personal property and "the fences and improvements on the land" sold, and pursuant to this sale the administrator sold "the improvements on the ranch" to Pat Croke, brother of the deceased, who in 1889 conveyed his holdings to Michael J. Reiley by "verbal transfer." Reiley was Bowen's father-in-law and partner; Croke was paid from partnership funds, and later Reiley conveyed any interest he might have to Bowen.

The land fenced by John Croke is in the tier of 40-acre tracts adjoining those described in his declaration of possessory right on the west; the subdivisions on which the fencing was placed were eventually patented, and by mesne conveyances Bowen acquired the land.

The plaintiffs question John Croke's right to appropriate water and the sufficiency of the foregoing evidence to show an appropriation as of June, 1882, the validity of an oral transfer of a water right, and, finally, the court's right to consider the testimony as to declarations against interest alleged to have been made by plaintiffs' predecessor in interest.

Under the law as it existed in 1882 (by Territorial Act of January 12, 1872), the rights of any person claiming the right to occupy, possess and enjoy a tract of not to exceed 160 acres of public lands shall be "respected in law and equity in all the courts * * * , as a chattel real, possessing the character of real property," as against all persons, associations and powers, except the government of the United States. (Sec. 1657, Div. 5, Comp. Stats. 1887.) This possessory right could be acquired by original occupation or by purchase; in the first instance, the right had to be "expressed and described" in a declaration, and in the second by deed, duly acknowledged and recorded. (Secs. 1658–1661, Div. 5, Id.)

A "possessory right" to a portion of the public domain is "initiated and made good by occupancy, settlement and the filing of notice thereof as required" by the statute. (*Cheney* v. *Minidoka County*, 26 Idaho, 471, 144 Pac. 343.) An error made in description in a bona fide attempt to comply with the law in claiming such a right within unsurveyed territory should not defeat the claimant's right.

John Croke complied with the law and acquired a possessory right to the land within his fence and was, therefore, competent to appropriate water for a beneficial use thereon, for "any person * * * who may have or hold a title or possessory right * * * to any agricultural lands, * * * shall be entitled to the use and enjoyment of the waters of the streams * * * for the purposes of irrigation * * * thereof." (Act of February 21, 1879, sec. 731, Div. 5, Rev. Stats. 1879.) At the time Croke filed his notice of appropriation there was no statute authorizing such filing. Mr. Justice Harwood, speaking for this court, declared in *Sweetland* v. *Olsen,* 11 Mont. 27, 27 Pac. 339, that where a party voluntarily files such a declaration, none being required, although it is not sufficient in itself to establish a right, the declaration is admissible as evidence of the intention of the party. The soundness of this holding is doubtful; the declaration is in the same category as that declared inadmissible in *Spellman* v. *Rhode*, 33 Mont. 21, 81 Pac. 395, and falls within no one of the recognized exceptions to the general rule that self-serving declarations are inadmissible, set out at length in 93 Am. Dec. 279. But, even by the application of the doctrine announced, the reception of the notice of appropriation is of no avail to the defendant, as the only intention evidenced therein is to apply the waters of the creek to a beneficial use at some time in the future, without designation of the proposed place of use.

Under the Act of 1879 above, "in all controversies respecting the right to water * * * the rights of the parties shall be determined by the dates of appropriation respectively, with the modifications heretofore existing under the local laws,

rules, or customs and decisions of the supreme court." (Sec. 741, Div. 5, Rev. Stats. 1879.) By the "decisions of the supreme court" the "essential features" of an appropriation, under the law as it then existed, were a completed ditch and the application of the water to a beneficial use. (*Maynard* v. *Watkins,* 55 Mont. 54, 173 Pac. 551.) The intention to appropriate water was not to be drawn from any declaration of a party, but was to be determined from the acts of the appropriator and by surrounding circumstances, the actual and contemplated use and the purpose thereof (*Wheat* v. *Cameron,* 64 Mont. 494, 210 Pac. 761; *Toohey* v. *Campbell,* 24 Mont. 13, 60 Pac. 396), and the date of the appropriation was fixed, not by the declaration or intention of the party but by the time when the proposing appropriator commenced to construct his ditch, provided he then prosecuted the work to completion, with due diligence. (*Maynard* v. *Watkins,* above; *Wright* v. *Cruse,* 37 Mont. 177, 95 Pac. 370.)

In 1885 provision was made not only for the posting, but also for the recording of notice of appropriation; the appropriator was required to commence work within forty days and to prosecute it with due diligence in order that his right might relate back to the date of posting. Persons who had theretofore acquired water rights were permitted to reap the benefits of the Act by complying with its requirements within six months after its passage. The chief benefit afforded is that the recorded notice shall be received in all courts as "prima facie evidence of the statements therein contained." (Sess. Laws 1885, p. 131; secs. 1255–1259, Div. 5, Comp. Stats. 1887.)

Croke did not comply with this last Act and, consequently, his so-called recorded notice is not even prima facie evidence of its contents, which, it will be noted, fall far short of showing an "appropriation," even if considered what it is worth. There is, however, sufficient evidence to show an appropriation by Croke, but the determination of its date and amount must be made from the evidence.

The defendant asserts that even though Croke did acquire a right, its date is immaterial as it could not pass by "verbal transfer." This contention is based upon the fact that, under the Act of 1872, above, "possessory title" to public lands could pass only by deed. The question as to whether Croke's right to the land passed to Reiley by the verbal transfer need not be decided. This court has long been committed to the holding, in effect, that the "possessory title" entitling a party to appropriate water for use on a part of the public domain is not confined to a right acquired by the compliance with the provisions of the above Act, but that any person who occupies land, fences and improves it with the bona fide intention of acquiring title from the United States at some time, has such title as will support a water appropriation—in common parlance, a "squatter's right" is sufficient—and that such a water right may be orally conveyed with his right in the land so held. (*Donnell* v. *Humphreys*, 1 Mont. 518; *Tucker* v. *Jones*, 8 Mont. 225, 19 Pac. 571; *McDonald* v. *Lannen*, 19 Mont. 78, 47 Pac. 648; *Wood* v. *Lowney*, 20 Mont. 273, 50 Pac. 794; *Toohey* v. *Campbell*, 24 Mont. 13, 60 Pac. 396; *St. Onge* v. *Blakely*, 76 Mont. 1, 245 Pac. 532.) Counsel for plaintiffs urge that in all of these decisions the court overlooked the Act of 1872, but at this late date we are not disposed to overthrow the rule announced.

The defendant is the present owner of the Croke right.

The remaining questions are as to the date of appropriation and the amount awarded. As heretofore stated, there was no proof of use before 1884; the proof relied upon to show that this right antedated that of the plaintiffs is testimony as to admissions of plaintiffs' predecessor in interest while holder of title.

Counsel for plaintiffs contend that the evidence was not admitted, as the court reserved its ruling in each instance and did not thereafter rule on the admissibility of the evidence. The practice of admitting evidence "subject to the objection" or on a reserved ruling as to its admissibility, and failing

thereafter to rule, has been severely criticised. (*Mayo* v. *Mazeaux*, 38 Cal. 445, 448; *Martin* v. *Lloyd*, 94 Cal. 204, 29 Pac. 491; *Shaffer* v. *Derring*, (Mo. App.) 272 S. W. 1049; see, also, *State ex rel. Rankin* v. *Martin*, 68 Mont. 392, 219 Pac. 632.) The vice of this practice is pointed out in the first case cited, as follows: "This loose practice often leaves it doubtful whether the particular evidence was excluded or not, or was considered by the court as an element in its decision. If rejected, it may have been on a point which the party might have supplied, if the decision had been made at the proper time."

It is said in 38 Cyc. 1347, that "a party who objects to the introduction of evidence is entitled to a ruling from the court, which should go into the record; and the failure of the court to rule on evidence received, subject to objection, upon request to do so, is error." We agree with the first statement—a trial court should rule on objections when made and the ruling should go into the record. In many jurisdictions a ruling at some stage of the trial is imperative, as counsel must save an exception in order to have the court's ruling reviewed; but this is not of great importance, since such ruling "is deemed excepted to." (Sec. 9387, Rev. Codes 1921; *General Fire Extinguisher Co.* v. *Northwestern Auto Co.*, 70 Mont. 1, 223 Pac. 504.)

As to the second statement, on which plaintiffs rely, the writer cites but two cases, neither of which justifies the text as a declaration of a general rule. The first, *Stockton* v. *Dunham*, 59 Cal. 609, merely sustains the trial court's ruling on an objection; the second, *Fuller* v. *Metropolitan Life Ins. Co.*, 68 Conn. 55, 35 Atl. 766, 57 Am. St. Rep. 84, is based on a specific statute, and the failure to rule is then held reversible error only when it appears that the party making the objection is injured by the action, or nonaction, of the court. In *Faulkner* v. *Elwood Mfg. Co.*, 79 Ill. App. 544, cited by counsel, the court criticised the action of the court in not ruling on an objection, but reversed the decision on the admission of

clearly incompetent evidence, in a case tried by a jury, which result would have followed regardless of the court's ruling.

Here the court considered the evidence, for otherwise there was no evidence on which the finding that the Croke right was initiated in June, 1882, could be based, other than the alleged admissions of Warren. The court, therefore, impliedly overruled the objections, which ruling "is deemed excepted to," and the most that plaintiffs can demand is that the ruling be reviewed. The situation is no different from that wherein the court admits evidence "subject to the objection," and thereafter fails to rule on the objection and considers the evidence, which is ·equivalent to overruling the objection. (*Jones* v. *Jernigan*, 29 N. M. 399, 223 Pac. 100.)

On the ruling counsel contend that the so-called ˉWarren deposition was not admissible, as it was not such an instrument as may be proved by certified copy; that the certified copy does not show that Warren was under oath; and that the defendant did not prove that Warren signed the original. ;These questions need not be considered, however, since the statements made do not constitute an admission that Bowen owned the first right out of the creek; they may be construed as an admission that Bowen owned the Croke right, but further than that they but evidence the willingness of the deponent to assist a neighbor to secure a piece of land under the Desert Act. If Warren owned the first right, and Bowen the second, Warren could make his statement true by his forbearance, or the Bowen land could be irrigated (in so far as the waters of the stream would permit) by the two rotating their use· under their rights, a practice approved under certain circumstances even in decreeing rights from a stream (25 Cal. Jur. 1140), or from aught that appears in the deposition, Warren may have referred only to the high-water seasons on the stream.

Contending, as they do, that the Calicoat testimony was not admitted, counsel for plaintiffs urge that "it would have been (or was) an abuse of discretion to admit it," because the case was only kept open for the reception of documentary evi-

dence, but the reopening of a case for the reception of further evidence is always within the sound discretion of the trial court, and this may be done even after the settlement of instructions on a proper showing (*Brange* v. *Bowen*, 57 Mont. 77, 186 Pac. 680); a showing that new testimony has been discovered after the case is closed but not finally submitted, appeals to the discretion of the trial court, and the reopening does not evidence such "clear abuse of discretion" as to warrant a reversal, if the testimony was otherwise admissible. (*Cole* v. *Helena L. & Ry. Co.*, 49 Mont. 443, 143 Pac. 974.)

They also assert its nonadmissibility, because of the nature ▮ of the evidence. Evidence of this nature is admissible. "Where * * * one derives title to real property from another, the declaration, act or omission of the latter, while holding the title, in relation to the property, is evidence against the former." (Sec. 10510, Rev. Codes 1921.) In California, where it is held that a water right is real property and can only be conveyed by deed, it has been declared, under a similar statute, that a title to land cannot be "made or unmade" by parol evidence, because there the statute does not warrant proof of declarations against interest to prove or disprove title (*People* v. *Blake*, 60 Cal. 497), but here, where water rights may be transferred by parol, the statute is held to authorize the admission of such testimony on the question of priority of water rights—the question here involved. (*Phillips* v. *Coburn*, 28 Mont. 45, 72 Pac. 291.)

The alleged declaration of Warren being admissible against his successors in interest, it was admissible in spite of the fact that Warren was dead at the time of trial. (Sec. 10514, Rev. Codes 1921; *Roy* v. *King's Estate*, 55 Mont. 567, 179 Pac. 821.) Although this class of evidence is "the weakest and least satisfactory of any in persuasive value" (*Escallier* v. *Great Northern Ry. Co.*, 46 Mont. 238, 127 Pac. 458, Ann. Cas. 1914B, 468), and should be received and weighed with caution (sec. 10672, Rev. Codes 1921; *Gray* v. *Grant*, 62 Mont. 452, 206 Pac. 410), it is admissible. In this case the evidence is corroborated to some extent by circumstances and inferences to be drawn

therefrom, is not disputed by any more persuasive evidence, and was believed by the trial court. We cannot, therefore, say that the finding that defendant's right antedates that of the plaintiffs is not supported by substantial evidence or that the evidence clearly preponderates against it.

The evidence is to the further effect that in each year mentioned, the owner of the Croke right diverted and used all of the water of the creek, which was but twelve to fourteen inches wide and "not so deep," and each year irrigated all the land the water would cover, and that by this method all of the land originally held by Croke was brought under cultivation to some extent. A civil engineer, testifying for the defendant, stated that there were 173.5 acres under the Croke ditch, and that the ditch would carry more than 172 inches.

Law and equity give to the first locator of land and claimant of water a sufficient quantity of water to irrigate his land. (*Thorp* v. *Woolman,* 1 Mont. 168.) The amount is determined by his needs and facilities for use at the time of appropriation. (*Conrow* v. *Huffine,* 48 Mont. 437, 138 Pac. 1904; *Mettler* v. *Ames Realty Co.,* 61 Mont. 152, 201 Pac. 702.) Much depends upon the intention of the appropriator; if he intended originally to bring his entire tract under cultivation and constructs a ditch large enough to do so, it is immaterial that he did not do so at once; he may later irrigate his whole tract under the original appropriation. (*Smith* v. *Duff,* 39 Mont. 382, 102 Pac. 984, 133 Am. St. Rep. 587; *Toohey* v. *Campbell,* above.)

There is sufficient evidence in the record to warrant a finding that Croke originally intended to irrigate his original squatter's right of 160 acres, and that one Reiley succeeded to Croke's water right and a portion of the land originally fenced by Croke, i. e., the upper 80 acres. However, one Flanagan filed upon and secured a patent to the lower 80 acres and there was no privity shown between him and Croke, or between him and Reiley. When he "got the land" he did not obtain the water right with it. (*Head* v. *Hale,* 38 Mont. 302, 100 Pac. 222; *Warren* v. *Senecal,* 71 Mont. 210, 228 Pac.

71.) The position of the defendant is no better than it would have been had he purchased an 80-acre tract with sufficient water to irrigate it. Croke's right was prescribed by the amount of land which he had fenced and reduced to possession prior to making his appropriation (*Toohey* v. *Campbell,* above) and which he could irrigate from his ditch, of which but half was acquired by the defendant from one who can be said to have succeeded to his water right. Reiley could acquire only sufficient water to irrigate the land he acquired, and, on the record, he acquired at most a right to 80 inches of the Croke right.

The cause is remanded to the district court of Judith Basin county, with direction to reduce the award to defendant to 80 inches, and, as amended, the judgment will stand affirmed. Each party will pay his own costs upon this appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.