TOOHEY, RESPONDENT, *v.* CAMPBELL, ET AL., APPELLANTS.

[No. 1,444.]

[Submitted January 23, 1900. Decided March 12, 1900.]

*Water Rights—Irrigation—Appropriation — Claimant's Intent—Beneficial Use.*

1. No one, by prior appropriation, can obtain exclusive control of an entire stream, or any part thereof, for irrigation purposes, unless the appropriation is for some beneficial purpose, existing or contemplated, and not for mere future speculative profit or advantage.

2. The right to the use of water, obtained by actual prior appropriation, diversion, and application of the water to a beneficial use then present or contemplated, may be owned without regard to the title to lands upon which the water is to be used.

3. As, under Civil Code, Section 1881, every appropriation of water must be for a bene-ficial or useful purpose, either existing or contemplated, a claimant's intent at the time of appropriation must be determined by his acts, and by surrounding circum-stances, its actual and contemplated use, and the purpose thereof.

4. Plaintiff's prior grantor claimed land under a squatter privilege, and in June, 1868, made an irrigating ditch to the land, having at that time about ten acres cultivated. In 1876, having about twenty-five acres inclosed, he made a timber-culture entry embracing the land possessed under the squatter privilege. *Held*, that while the appropriator was entitled to sufficient water to irrigate his whole claim after the en-try in 1876, he could not be allowed more than fifty inches for the appropriation of 1868, since, the timber-culture act not having been passed until 1873, he could not have intended at the time of the appropriation in 1868, a beneficial use of more water than a quantity sufficient for the land thereafter reduced to possession, prior to 1876.

5. Where the amount of water for irrigation to which a settler was entitled under an appropriation was determined by the extent of beneficial use to which he intended to put it at the time of appropriation, his intent being determined by the extent of the tract actually reduced to possession and cultivated, the intent could not be en-larged by the fact that he had a partner in his undertaking.

*Appeal from District Court, Gallatin County; F. K. Arm-strong, Judge,*

ACTION by Pat Toohey against W. S. Campbell and anoth-er and B. Graham, intervenor, to establish an irrigation water right. From a judgment in favor of plaintiff, defendants appeal. Modified.

*Mr. Lewis Penwell* and *Messrs. McConnell & McConnell,* for Appellants.

*Messrs. Halloway & Hoffman,* for Respondent.

**MR. JUSTICE HUNT** delivered the opinion of the Court.

Plaintiff, who is the respondent here, brought this action against defendants (appellants) to establish his right to the use of 200 inches of the waters of the East Gallatin river, flowing through what is known as the "Flannery Ditch," in Gallatin county. Defendants answered, denying plaintiff's right to the use of said waters or said ditch, and setting up their own claims to certain lands, and the use of certain waters from the said East Gallatin river, through the said Flannery ditch. B. Graham intervened, claiming a right to use certain water through said ditch, and denying plaintiff's alleged rights.

There was a trial to a jury. Special findings and general verdict were returned in favor of plaintiff, by which plaintiff

was declared to be entitled to the use of 200 inches of the waters of the East Gallatin river as appropriated in June, 1868, with a right to use the Flannery ditch for the conduct of said waters. The court adopted the general verdict and special findings, made certain other findings of its own, and adjudged the plaintiff, defendants, and intervenor to be tenants in common in the Flannery ditch, and that plaintiff was entitled to the use of 200 inches of water of the East Gallatin river, to flow through the Flannery ditch.

Defendants appealed from the judgment, presenting, by a bill of exceptions, the question whether the court was justified by the evidence in allowing plaintiff the use of 200 inches of water from June, 1868, which put plaintiff's entire right upon an equal footing with the rights of the defendants and the intervenor, or whether plaintiff should have been limited to a right to use only 50 inches as appropriated in June, 1868, and the other 150 inches as appropriated in December, 1876. We so state the question because the following material facts were testified to by plaintiff's witnesses:

William Flannery said that he had known the land claimed by plaintiff, and called the "Toohey Land," since 1866, and was also familiar with the lands belonging to the defendants and the intervenor; that he had lived on the Campbell land and on the Davis land, and had had these lands inclosed and cultivated; that he settled on the Toohey land about January 1, 1866, and constructed two ditches for the land,—one for himself, and the other in partnership with others; that in 1889 his individual ditch had a capacity of 3,500 inches, and that this is what is known as the "Flannery Ditch," which was used in connection with the Toohey land; that out of this ditch water was first put on the Toohey land in 1869, there having been in cultivation at that time about 10 acres of the tract, and that water had been used on the land every year after 1869 until July 9, 1885, at which time there had been brought under cultivation on the Toohey land about 50 acres; that on July 9, 1885, the land was fenced with other land about it, and there were irrigating ditches upon it at that

time; that up to July, 1885, the land had been irrigated by a ditch taken out of the Flannery ditch which ran around the Campbell land and across the south end of the Toohey land; that on December 15, 1876, he made a timber-culture entry on the Toohey land, and this timber-culture entry was kept in force until the said 9th of July, 1885, when he relinquished his rights in favor of his mother, who continued to improve the land, and eventually obtained patent for it.    Witness also said that, since his mother took possession in July, 1885, she had used the water on the land through the Flannery ditch; that he had used the water of that ditch to irrigate the land, as he did the Campbell and Davis lands; that from 1885 to 1896 about 145 acres of the ground had been in cultivation, and that there was plenty of water flowing through the Flannery ditch to irrigate the Toohey land and the Davis and Campbell lands, except in occasional years, when the water was short.    The cross-examination brought out that witness simply had an ordinary squatter's claim to the land when he took out the ditch; that he was not claiming it under the homestead or pre-emption laws, and that he pre-empted a part of this land afterwards, and made a homestead upon part of it, but that the part he took up under the timber-culture act was the Toohey land; that in 1868 he had inclosed with a fence about 25 acres of the Toohey land, and that in 1878 more of it was inclosed, as also in 1880.    Witness said that he had had a partner at first in the settlement he made upon these lands, and that he and his partner claimed 480 acres at that time; that he afterwards bought his partner out; that he first ran water through the Flannery ditch on the Toohey land about the last of May, 1869; and that Toohey bought the land from his mother.

A witness named Arnold testified that a part of 40 acres of the Toohey land was fenced in 1869; that in that year some 6 or 8 acres had been irrigated, but that he could not state that there was ever any land cultivated on the Toohey tract, except a little piece that had been irrigated, before 1876.

The plaintiff testified that he had known the land since

1878, and that there had been about 25 or 30 acres in culti-vatian when he first knew it, but that it was all in cultivation at the time he testified, and that the water to irrigate the land was procured from the Flannery ditch.

Upon the foregoing undisputed facts we believe the defendants are entitled to have the decree of the district court modified so as to allow plaintiff the right to the use of but 50 inches of water through the Flannery ditch as of a date in June, 1868, together with the right to the use of 150 inches as of December 15, 1876, when Flannery took up 160 acres as a timber-culture claim.   Certain principles controlling the law of water rights direct us to this conclusion.   One of the rules in the system of the law of water rights is that no one man can, by prior appropriation, obtain exclusive control of an entire stream, unless his appropriation is made for some beneficial purpose, presently existing or contemplated.  · He is restricted in the amount that he can appropriate to the quantity needed for such beneficial purposes.    ''The intention of the claimant is, therefore, a most important factor in determining the validity of an appropriation of water.   When that is ascertained, limitation of the quantity of water necessary to effectuate his intent can be applied according to the acts, diligence, and needs of the appropriator.''   (*Power, et al.* v. *Switzer*, 21 Mont. 523, 55 Pac. 32.)

The policy of the law is to prevent a person from acquiring exclusive control of a stream, or any part thereof, not for present and actual beneficial use, but for mere future speculative profit or advantage, without regard to existing or contemplated beneficial uses.

We recognize the doctrine that right to the use of water may be owned without regard to the title to lands upon which the water is to be used; that is, that a right to the use of water is a possessory one, that may be obtained by actual appropriation and diversion, perfected by application of the water so appropriated to a beneficial use then present or contemplated, and made before appropriation and use by another. But, as every appropriation must be made for a beneficial or

useful purpose (section 1881, Civil Code), it becomes the duty of the courts to try the question of the claimant's intent by his acts and the circumstances surrounding his possession of the water, its actual or contemplated use and the purposes thereof.

When, therefore, we look into the facts of the case under consideration, in our judgment, Flannery, as the appropriator of the water, never meant to use it, at the time of the diversion, upon any portion of the Toohey land other than the part inclosed, or prior to 1876. It cannot be said that he contemplated acquiring title to any part of the Toohey land not under cultivation, for he states that he used the only rights he could then avail himself of,—pre-emption and homestead upon adjoining lands,—and admits his only claim to the Toohey land before 1876 was a squatter's privilege. As the timber-culture act was not passed until 1873, and was not proceeded under by Flannery until 1876, he could not have had in contemplation acquisition of title to the land under this law before its enactment by congress; while he never claimed or possessed but about 25 acres under any other right before 1876. Hence it seems clear that his intent, in 1868, in the then present and contemplated use of the water then diverted, never reached beyond the purpose of irrigating the part of the Toohey tract inclosed, or about 25 acres only. Of course, when he took up the land in 1876, embracing his former inclosure and possessory claim, his right to the use of sufficient water to irrigate his whole claim from that time forward must be recognized, and is conceded by appellants. But his rights up to 1876 must be limited to a quantity sufficient to irrigate what he then had in actual possession. This amounted to no more than 25 acres, for which a right to the use of 50 inches is sufficient.

The fact that Flannery had a partner, who was also claiming land, cannot help extend an intent that could not possibly have existed in his or his partner's mind at the time of the diversion of the water. Neither of them ever inclosed but few acres of the Toohey ground, or irrigated more, or defined

the boundaries of any greater tract, or otherwise did any act evincing an intent to use water upon any larger area than the portion actually cultivated from 1868 to 1876.

The cases of *McDonald* v. *Lannen, et al.*, 19 Mont. 78, 47 Pac. 648, and *Wood* v. *Lowney, et al.*, 20 Mont. 273, 50 Pac. 794, are not pertinent, as in each of these instances the extent of the right of use was measured by the confessed *bona fide* claim to the lands sought to be irrigated. The intentions of the settlers at the times of their diversions were not the points upon which the cases turned for decision.

We recognize that possessory rights upon the public domain will be protected, and that appropriations of water for the benefit of squatters' claims will be upheld, but such appropriations must always be for beneficial uses then existing, or contemplated in the future, and as against others, who have initiated rights, will not avail, where there is no actual possession held, and where it is evident none was claimed with a purpose of securing privileges and rights under the laws of the United States existing when the squatters went upon the unsurveyed tracts.

Flannery is, therefore, only entitled to 50 inches as of June, 1868, and the decree should be modified as indicated herein.

The cause is remanded, with directions to modify the decree as herein indicated, and, when so modified, the judgment will be affirmed.

*Modified and affirmed.*