JACOBS, APPELLANT, *v.* CITY OF HARLOWTON, RESPONDENT.

(No. 5,044.)

(Submitted January 25, 1923. Decided February 27, 1923.)

[213 Pac. 244.]

*Injunction—Waters and Water Rights—Limit of Rights of Appropriator.*

Water Rights—Limit of Right of Appropriator.

1. The extent of an appropriation of water is limited to beneficial use, irrespective of a greater amount the claimant attempts to appropriate.

Same.

2. An appropriator of water is limited in his rights to the amount his ditch will actually deliver to the place of use, and in trying the question of the claimant's rights his intent when making the appropriation must be judged by his acts, the circumstances surrounding his possession of the water, its actual and contemplated use and the purposes thereof.

Same.

3. The needs and facilities of an appropriator of water, if equal, measure the extent of his appropriation, and if his needs exceed the capacity of his means of diversion, then the capacity of his ditch measures the extent of the right.

Same.

4. Where plaintiff, claiming an appropriation of 600 inches of water for irrigation purposes had never cultivated more than 140 acres of his land, he was in no position to compel defendant city to remove a culvert, constructed to carry the water through a portion of the city, with a carrying capacity of from 200 to 225 inches,

or more than he was legally entitled to, his claim that its carrying capacity should be sufficient to accommodate the full 600 inches appropriated being without merit under the above rules.

*Appeals from District Court, Wheatland County; E. H. Goodman, Judge.*

SUIT for injunction by Williams F. Jacobs against the City of Harlowton. From the judgment for defendant and an order denying plaintiff's motion for new trial, he appeals. Affirmed.

*Messrs. Jones & Jones* and *Messrs. Templeman & Sanner,* for Appellant, submitted a brief, and one in reply to that of Respondent; *Mr. Sydney Sanner* argued the cause orally.

The right of an appropriator to have the waters appropriated come to him undiminished in quantity and undeteriorated in quality has been vindicated by the courts of this state from the earliest times. (*Caruthers* v. *Pemberton,* 1 Mont. 111; *Barclay* v. *Tieleke,* 2 Mont. 59; *Fabian* v. *Collins,* 3 Mont. 215.) A ditch being property, the owner is entitled to have it remain intact, and therefore may prevent others from interfering with it in such a manner as to injure him; he is entitled to have the water in it remain sufficiently pure for irrigation purposes, and therefore he may enjoin pollution; he is entitled to undiminished flow, and therefore has his action for any obstruction of or interference with that. (2 Farnham on Waters, p. 1980; *Babcock* v. *Gregg,* 55 Mont. 317, 178 Pac. 284; *Hotchkiss* v. *Young,* 42 Or. 446, 71 Pac. 324; Kinney on Irrigation, sec. 332; *North Point Irrigation Co.* v. *Utah, etc. Canal Co.,* 16 Utah, 246, 40 L. R. A. 851, 52 Pac. 168; *Crane* v. *Windsor,* 2 Utah, 248.) And the action in cases of obstruction or interference with quantity or quality of flow is in the nature of a proceeding to abate a nuisance and, where compensation in damages is not asked, belongs exclusively to equity. (*Chessman* v. *Hale,* 31 Mont. 577, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254; *Tuolumne Water Co.* v. *Chapman,* 8 Cal. 379; *Crane* v. *Windsor, supra; Parke* v. *Kilham,*

8 Cal. 77, 68 Am. Dec. 310; *Phoenix Water Co.* v. *Fletcher*, 23 Cal. 482.)

Estoppel *in pais* cannot arise from the situation presented in this case, because the conditions at the time of construction did not call for speech. (*Louisville & N. Ry.* v. *Walton* (Ky.), 67 S. W. 988; *Fox* v. *Fostoria*, 14 Ohio Ct. 471; *Hallock* v. *Suitor*, 37 Or. 9, 60 Pac. 384; *Madson* v. *Spokane V. L. & W. Co.*, 40 Wash. 414, 82 Pac. 718; *Hikox* v. *Parmelee*, 21 Conn. 86; *Brown* v. *Bowen*, 30 N. Y. 519, 86 Am. Dec. 406; *Jones* v. *Proprietor's etc.*, 62 N. H. 488.)

The contention that the culverts carry all the water we are entitled to is based upon the argument that we have but 140 acres of land under irrigation. That fact has no relevancy here, since we are not seeking recovery in damages. If this respondent can, in this suit, question the amount of appellant's right, which we deny, that right is not to be measured or confined by the lands presently under irrigation. (*McDonald* v. *Lannen*, 19 Mont. 78, 47 Pac. 648; *Smith* v. *Duff*, 39 Mont. 382, 133 Am. St. Rep. 587, 102 Pac. 984; *Bailey* v. *Tintinger*, 45 Mont. 154, 122 Pac. 575.)

This is the case of an owner of land who possesses a water right and ditch for the irrigation thereof; whose ditch has been by the acts of the respondent obstructed, and thereby the flow of water diminished; whose lands by reason of such acts and their consequential results have been rendered less valuable and the possibility of suitably cropping the same more remote —a clear case of continuing invasion of this appellant's rights, from which he is entitled to relief. And it is a case to which there has been presented no substantial defense. As stated above, we do not assert that the city could not put culverts in this ditch; what we do say is that it cannot lawfully, because it cannot without injury to this appellant, maintain these culverts as they are now installed. What, then, should be the decree? Appeal has been made to the idea of comparative importance, and it is suggested that the city ought not to be required to remove these culverts, installed at a great expense,

in order that the trivial convenience of the appellant should
be served. But that suggestion cannot stand; the doctrine of
comparative importance has received scant recognition in this
state, and the practical loss of a large area of irrigable land
is not a trivial thing. Neither is it true that the city would
necessarily be compelled to remove the culverts. All that we
ask is that they be made to cease obstructing the appellant's
ditch and diminishing the supply of his water, and this, ac-
cording to the testimony, can be done at moderate expense.
(*Wilhite* v. *Billings etc. Power Co.,* 39 Mont. 1, 101 Pac. 168.)

Messrs. *Belden & De Kalb* and *Mr. W. C. Husband,* for Re-
spondent, submitted a brief; *Mr. H. L. De Kalb* and *Mr. Hus-
band* argued the cause orally.

It is well established in this state that the extent of the
right of an appropriation is measured by the beneficial use,
and the tendency of the court is to disregard entirely the ca-
pacity of the ditch or headgate and limit the appropriation by
the needs of the appropriator. (*Conrow* v. *Huffine,* 48 Mont.
437, 138 Pac. 1094; *Bailey* v. *Tintinger,* 45 Mont. 154, 122 Pac.
575.) There is no showing made by the appellant that he
would require more than the customary one inch to the acre,
for the cultivation of his land. In fact its own evidence may
be epitomized by the suggestion that he apprehended that he
may be in a position to need water, as distinguished from any
substantial injury ever having been occasioned him from the
result of the culverts. We submit that the culverts being able
to carry a continuous flow of from two hundred to two hun-
dred twenty-five inches would carry more than was sufficient
to supply appellant's maximum need.

The only remedy the plaintiff seeks in this case is mandatory
injunction. He cannot have a mandatory injunction. A man-
datory injunction, or any injunction, for that matter, cannot
be issued without taking into consideration the comparative
injury from granting or withholding relief. Thus the rule
is laid down as follows, to 20 R. C. L., page 480, section 93:

"It is generally accepted rule governing the issuance of injunctions that the measure of loss to one party and the advantage to the other by granting or refusing injunctive relief has its proper influcnce in determining the relief to be administered by a court of equity, except in cases controlled by some positive statutory enactment. And this principle governs in suits to abate nuisances as well as in other cases. A preliminary injunction will be refused where the defendant's damages and injuries will be greater by granting the injunction than will be the plaintiff's benefit therefrom." In this connection let us direct the court's attention to the fact that if a mandatory injunction were issued, it would require the removal of a great many thousand dollars' worth of city improvements. Greater hardship would be entailed upon the city by a removal of the culverts, or their reconstruction to meet the unreasonable demand of the appellant, than would be entailed upon the plaintiff if the culverts remained, and under the settled rules this bars the plaintiff's right to an injunction. The rights of the public in a case of this character are paramount and have to be given consideration, and it is laid down tersely by the authorities that where the damage to the complainant from the refusal and injunction will be relatively slight and public interests will suffer by its issuance, an injunction will be refused. (*Grey* v. *Patterson,* 58 N. J. Eq. 1, 48 L. R. A. 717, 42 Atl. 749; *Union Planters Bank Co.* v. *Memphis Hotel Co.,* 124 Tenn. 649, 39 L. R. A. (n. s.) 580, 139 S. W. 715; *Lewis* v. *Pingree National Bank,* 47 Utah, 35, L. R. A. 1916C, 1260, 151 Pac. 558.)

The action of the council in creating the improvement district and the placing of culverts over the ditch, was an authorized act. 20 R. C. L., page 500, is authority for the following statement: "Or, as the doctrine sometimes has been expressed, where the doing of a thing that would otherwise be a public nuisance, is authorized by the legislature, the doing of that thing by the person so authorized, cannot constitute a public nuisance, in the absence of negligence, and such neg-

ligence must consist of something more than the mere doing of the authorized act." (*Kingsley* v. *Delaware etc. R. Co.*, 81 N. J. L. 536, 35 L. R. A. (n. s.) 338, 80 Atl. 327; *Traphagen* v. *Erie Railroad Co.*, 73 N. J. L. 759, 9 Ann. Cas. 964, 64 Atl. 1072, 67 Atl. 753.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in injunction, brought to restrain the defendant from interfering with or obstructing the flow of water diverted from the Musselshell River through plaintiff's ditch, to his lands, which water was appropriated and used for irrigation in the successful growing of agricultural crops. It appears that the defendant is a municipal corporation located within the county of Wheatland, and that the plaintiff is the owner and in occupancy of 520 acres of land contiguous to the city of Harlowton; that for the purpose of irrigating such lands in the year 1902, long prior to the existence of Harlowton as a municipality, or at all, the plaintiff's predecessor in interest, D. A. Holliday, appropriated a water right for irrigating the land to the amount of 600 inches, to be diverted by means of a dam and headgate and carried by the the ditch in question to the land now owned by plaintiff. In the season of 1919, prior to the institution of this action, the plaintiff had under irrigation a total of 140 acres, and that is the greatest total acreage ever cultivated or irrigated by the plaintiff or his predecessors. In 1914 the city of Harlowton created an improvement district in accordance with the law providing for the construction of cement sidewalks and cement curbs on all streets and avenues, also cement crosswalks at all street and avenue intersections within its boundaries, the plans and specifications for which were prepared by a competent engineer and showed the details for the construction of culverts to inclose plaintiff's ditch at points where it crossed certain streets. The culverts were constructed in accordance with specifications.

At the time of the creation of the improvement district and the making of such improvements, the land of the plaintiff belonged to the estate of A. C. Graves, of which F. P. Marrs was then the administrator, and he was also a member of the city council of Harlowton. Marrs was present at various meetings of the council when the several proceedings looking to the creation of the improvement district were discussed, made no protest whatsoever, and the Graves estate paid its improvement assessments from year to year on account of such improvements upon certain lots owned by it in the improvement district, without objection or protest. The ditch is at a point below the last culvert complained of, off grade for a distance of about fifty yards, so that the water in the ditch will back up and overflow, and the general gradient of the ditch otherwise is fifteen feet fall to 10,000 feet. The maximum capacity of the culverts is 225 inches of water. The plaintiff was acquainted with the land irrigated by the ditch as early as April, 1915, at that time being interested in a lease of the land; the improvement district having then been created and the culverts constructed. In 1918 he held the land under lease, and because of inability to obtain sufficient water cut but fifteen tons of hay, and of twenty-five acres of land in oats raised but half a crop. While still in possession of the land, and after such knowledge of the conditions existing, he purchased the land from the Graves estate in February, 1919, accepting in April following a transfer of title by an ordinary warranty deed, without special covenants or other agreement. The land was conveyed to the plaintiff and accepted by him with full knowledge of conditions as they existed.

The prayer of the complaint, if granted, would require the [1-4] issuance of a mandatory injunction compelling the defendant to remove its concrete conduits placed by it at points of intersection of plaintiff's ditch and the street crossings. Upon issue joined the cause was tried to the court without a jury, after which findings of fact and conclusions of law were made and filed in favor of the defendant, upon

which judgment was duly entered. The appeal is from the judgment and from an order denying plaintiff's motion for a new trial.

Although many errors are assigned, there is, in our opinion, but one question involved determinative of these appeals, *viz.*: Are the culverts in question of sufficient size and capacity to convey all the water to which plaintiff is entitled through his ditch?

There is no testimony as to the amount of plaintiff's land susceptible to irrigation other than 140 acres, the largest amount ever put in crop; so that, notwithstanding the amount of water attempted to be appropriated by his predecessor in interest, he is limited in right under the facts in this case to the amount the ditch will carry put to beneficial use. One hundred and forty inches of water delivered on plaintiff's land is ample to irrigate his lands under cultivation, as shown by the evidence, and, since the culverts complained of have a much greater carrying capacity (200 to 225 inches), the plaintiff has no just cause for complaint. He had full knowledge of the condition of the ditch, the existence of the culverts, and the carrying capacity of the ditch, and had had such knowledge several years before he made purchase. The plaintiff's position would appear to be that, because his predecessor in interest had many years before filed an appropriation for 600 inches of water with which to irrigate plaintiff's lands, therefore the culverts constructed by the city should have a carrying capacity for that amount irrespective of plaintiff's needs. There is, and can be, no merit in such contention. The extent of an appropriation of water is limited to beneficial use, and this irrespective of greater quantity attempted to be appropriated. (*Bailey* v. *Tintinger,* 45 Mont. 154, 122 Pac. 575; *Conrow* v. *Huffine,* 48 Mont. 437, 138 Pac. 1094.) Again, the appropriator is limited in his rights to the amount of water his ditch will actually deliver to the place of use. (*Wheat* v. *Cameron,* 64 Mont. 494, 210 Pac. 761.)

"As every appropriation must be made for a beneficial or useful purpose, * * * it becomes the duty of the courts to try the question of the claimant's intent by his acts and the circumstances surrounding his possession of the water, its actual or contemplated use and the purposes thereof." (*Toohey* v. *Campbell*, 24 Mont. 13, 60 Pac. 396; *Miles* v. *Butte Electric & Power Co.*, 32 Mont. 56, 79 Pac. 549; *Smith* v. *Duff*, 39 Mont. 382, 133 Am. St. Rep. 587, 102 Pac. 984.) The appropriator's need and facilities, if equal, measure the extent of his appropriation. (*Sayre* v. *Johnson*, 33 Mont. 15, 81 Pac. 389; *Bailey* v. *Tintinger, supra.*) If his needs exceed the capacity of his means of diversion, then the capacity of his ditch measures the extent of the right. (*McDonald* v. *Lannen*, 19 Mont. 78, 47 Pac. 648; *Bailey* v. *Tintinger, supra.*) Applying these settled principles, it is plain that the culverts will carry all the water to which plaintiff is legally entitled. The trial court was correct in denying an injunction and in entering judgment in defendant's favor. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.