PECK, EXECUTRIX, RESPONDENT, *v.* SIMON ET AL., APPELLANTS.

(No. 7,402.)

(Submitted November 7, 1935. Decided November 27, 1935.)

[52 Pac. (2d) 164.]

*Mr. W. J. Paul,* for Appellants, submitted a brief and argued the cause orally.

*Mr. John K. Claxton* and *Mr. John A. Shelton,* for Respondent, submitted a brief; *Mr. Shelton* argued the cause orally.

14

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action in the district court of Silver Bow county to secure the adjudication of a water right on the stream known as Brown's Gulch and its tributaries in that county. Numerous parties defendant were named in the complaint. Findings of fact and conclusions of law were made and filed, and a decree was entered in conformity therewith, adjudging that plaintiff was the owner of two rights, namely, one of 75 inches, the priority of which antedated the year 1874, and a second of 200 inches which antedated the year 1875. Both of these rights are out of Brown's Gulch. Likewise the court made findings of fact, conclusions of law and decree with reference to the rights of the defendants Simon, as follows: 35 inches as of date of June 1, 1882, appropriated out of Brown's Gulch; 35 inches as of the same date appropriated from Hail Columbia Gulch, and 27 inches appropriated as of like date out of Bull Run Gulch; also a right of 15 inches as of July 1, 1898, appropriated out of Brown's Gulch.

The defendants Simon perfected an appeal to this court from the judgment, and likewise at a later date an appeal was perfected on behalf of the plaintiff. Many other rights are adjudicated by the decree, but aside from the parties to the suit mentioned supra, none of the other parties defendant have appeared or perfected appeals to this court. None of the rights of the other defendants who have neither appeared nor appealed are sought to be reviewed by either of the appeals now before us for consideration. These appeals were argued the same day, and both will be considered on the merits in this opinion.

The defendants Simon on their appeal have no complaint as to the amount of water awarded to them under the decree, but contend that their appropriations should have an earlier date as of the year 1875, whereas plaintiff by her appeal with reference to the rights of defendants Simon contends that they were entitled to a right of no earlier date than the year 1888. Defendants Simon, as to plaintiff's rights, contend that as to a

portion of her award it should be no earlier than May 1, 1882, and as to other portions no earlier than the year 1885. Plaintiff contends on her appeal that as to her right she should have received at least an award of 400 inches under the two appropriations,—100 inches under the Wright ditch and 300 under the Gassert ditch. The parties in their respective appeals by appropriate and numerous specifications of error have presented the foregoing questions for consideration.

We will first consider the contentions of the parties with reference to the rights of the defendants Simon. They acquired the lands to which their rights are appurtenant by contract entered into in the year 1888; they entered into possession the first of the year 1889 and have continued in possession of the lands and used water thereon since that date. It appears from the evidence that a predecessor in interest of theirs, one Carver, was in the possession of these lands for a number of years, and, according to some of the witnesses at least, irrigated them and produced hay thereon. The lands of the defendants Simon are irrigated by a ditch proceeding from a point on Brown's Gulch along the east side of that stream, crossing Hail Columbia Gulch and, lower down, Bull Run Gulch. A short ditch from Hail Columbia Gulch diverts water from that stream into the main ditch, and a like ditch from Bull Run Gulch delivers water from that stream into the same ditch. A considerable portion of the lands of these defendants which are irrigated lies below the crossing of the main ditch over Bull Run Gulch. Some of their lands lie west of Brown's Gulch, and these are irrigated by means of a flume across that stream taking water from the same ditch.

In order to dispose of the contentions of the parties with reference to these rights it becomes necessary to review the testimony. William Thomas, who was a brother of Mrs. Carver, the wife of the occupant and owner of these lands for a number of years, testified that in the year 1877 he assisted his brother-in-law, Carver, during the haying season the latter part of July or first part of August for a period of some three weeks; that during this employment he cut the hay on the lands and ob-

served the ditches which were substantially in the same location as at the time of the trial, and that when he went there he observed water running in the ditches which was shut off in order to facilitate the harvesting operations. He testified as to the size of the ditches and the amount of hay harvested. He was at that time, according to his testimony, 23 or 24 years old.

Mrs. Mary Jones testified that she was a sister of Mrs. Carver, and that her sister married when she (witness) was ten years of age; that her sister and her husband within a year or so after their marriage removed to the lands which are now a portion of plaintiff's ranch, but that Carver owned and occupied these lands now belonging to the defendants Simon, and that she spent her summers with the Carvers until she herself was married. She testified that she recalled going out to these lands with her sister picking gooseberries, and that in the summer of 1877 she saw her brother stacking hay there that year; saw the ditches and water in them on the lands.

Quenton Owen, a witness on behalf of defendants, testified that he stacked hay on this ranch in the summer of 1882; saw the ditches, and the crops indicated that water had been used that year, and that the lands were of such a nature and character as to require irrigation to produce a successful crop. Later that fall he saw water in the ditches and a man in the field with a shovel, but he did not observe this person engaged in irrigation.

Plaintiff called three witnesses in rebuttal, and argues that, in view of their testimony, the court was not warranted in finding the date of appropriation earlier than the year 1888. One of these witnesses, Edward Travers, testified that he arrived in Brown's Gulch in the spring of 1884 and worked there in connection with a timber flume for a period of about two and a half months. He was not there during the haying season. He said that he went fishing during the summer along Brown's Gulch, and in answer to an inquiry as to whether any water had been taken out of the gulch in 1884 and used for irrigation around where he worked, which was on or near by the lands in question, he replied, "Well, there was none taken out as far as I seen

to my knowledge outside of what was taken out on the place we called the Foster place.'' The Foster place is not on any of the lands owned by either of the parties before the court on this appeal. He said the ditches were taken out on the Simon place some time in 1888.

William Geary, another witness, testified that he lived in Brown's Gulch from 1880 to 1886; that he went fishing there in 1881 and never saw any ditches, but that he was not looking for ditches.

E. D. Elderkin testified that he lived in Brown's Gulch, and his testimony on this point on direct examination is confined to one question and answer as follows: ''Q. In the year 1883 did you ever see any ditch, artificial ditch or channel, that took water from any of these springs for the purpose of irrigation? A. No I did not.'' On cross-examination he said he never saw any ditches in that part of the country at that time.

In further rebuttal plaintiff offered a water right location filed for record on October 7, 1878, made by Charles H. Carver, the predecessor in interest of the defendants, which, omitting the verification, in the body of the instrument, reads as follows: ''To all whom it may concern: Notice is hereby given that the undersigned, a citizen of the United States, and more than 21 years of age, has on this 28th day of September, A. D. 1878, claimed, located and appropriated all of the water of Brown's Gulch to be diverted or taken out about 200 yards (more or less) above the mouth of Hail Columbia, and the water of the latter stream to be taken out at the point where the ditch from Brown's Gulch (when constructed) will cross it, said water to be used below the mouth of Bull Run creek on Brown's Gulch.''

With reference to the three rebuttal witnesses for the plaintiff, the testimony of two related to a period of time subsequent to the date found by the court of the inception of defendants' appropriation, and the testimony of the third rebuttal witness related in part to a like period of time. The trial court therefore must not have relied upon the testimony of these witnesses in this case, as otherwise it would have found a later date for the commencement of defendants' appropriation. The

testimony of the witness Owen related to the use of the water in the year 1882 which was the year found by the court for defendants' appropriation. The testimony of the witnesses Thomas and Mrs. Jones was not disputed, except by the three rebuttal witnesses which, apparently, the court did not believe, and whose testimony was at best of a negative character, being all to the effect that they observed no ditches. No one of them was searching for ditches. None of them testified that no ditches existed.

The only other rebutting testimony, if at all, is the water right notice of Carver, which referred to the construction of a ditch in the future. It will be observed that this notice in no way indicates on what lands or for what purpose the waters appropriated were to be used—whether on the lands in question or other lands does not appear; and for aught that appears from the notice, it may have been an intended appropria-. tion in addition to existing appropriations, if any. At the time this notice was filed there was no statute authorizing such filing. (*Gilcrest* v. *Bowen,* 95 Mont. 44, 24 Pac. (2d) 141.) The force and effect of such a document was considered by this court in the *Gilcrest Case,* and therein it was said: "At the time Croke filed his notice of appropriation there was no statute authorizing such filing. Mr. Justice Harwood, speaking for this court, declared in *Sweetland* v. *Olsen,* 11 Mont. 27, 27 Pac. 339, that where a party voluntarily files such a declaration, none being required, although it is not sufficient in itself to establish a right, the declaration is admissible as evidence of the intention of the party. The soundness of this holding is doubtful; the declaration is in the same category as that declared inadmissible in *Spellman* v. *Rhode,* 33 Mont. 21, 81 Pac. 395, and falls within no one of the recognized exceptions to the general rule that self-serving declarations are inadmissible, set out at length in 93 Am. Dec. 279. But, even by the application of the doctrine announced, the reception of the notice of appropriation is of no avail to the defendant, as the only intention evidenced therein is to apply the waters of the creek to a beneficial use at some time in the future, without designation

of the proposed place of use." Following this quotation the court observed that a similar recorded notice "is not even prima facie evidence of its contents, which, it will be noted, falls far short of showing an appropriation even if considered for what it is worth." Since such a notice fails to establish an appropriation it likewise must fail to disprove or rebut an appropriation otherwise prima facie established.

Plaintiff contends that the testimony of William Thomas and Mrs. Jones is not to be believed because of their certainty with reference to the facts relative to which they testified concerning defendants' right and their failure to recall many facts which counsel desired to have them testify concerning plaintiff's rights. However, they did recall and testify to numerous facts with respect to plaintiff's rights, and, after careful review and consideration of their evidence we are unable to agree with this contention of counsel for plaintiff. The testimony of Owen, which the trial court must have believed, was in nowise inconsistent with that of Thomas and Mrs. Jones.

We conclude that the testimony preponderates against the court's finding as to the date of the appropriation, June 1, 1882, and clearly establishes an appropriation of the various rights as and for the date of May 1, 1877, and the findings, conclusions of law, judgment and decree should be so modified.

We now proceed to the consideration of the contention of the parties with reference to the rights of the plaintiff. It appears that the right originating through the Gassert ditch was originally taken for the purpose of operating an arrastra located at a point below the lands of plaintiff. These operations continued for a number of years and antedated several years the date awarded by the court in its decree. The right which had its inception in the Wright ditch was taken out originally for placer mining operations, likewise below plaintiff's land. These mining operations were conducted for a number of years prior to the date fixed by the court for this right. Subsequent to the year 1880, and about the year 1882, the then owners of

20

the Wright ditch, predecessors in interest of the plaintiff, ceased their mining operations and began the use of the waters through this ditch for irrigation, and about 1885 had increased the use of the water for agricultural purposes. The owners of the Gassert ditch, predecessors in interest of plaintiff, about the year 1882 began using water through this ditch for irrigation of lands now the property of the plaintiff. It is the contention of the defendants that when the owners of these mining water rights ceased using them for that purpose and devoted them to the purpose of irrigating agricultural lands, it was in effect a new appropriation, and that their appropriations for such latter purposes should be dated from the date they commenced to use the water for agricultural purposes.

All of the appropriators of Brown's Gulch have their points of diversion and make use of their waters above the point of diversion of plaintiff's ditches. The use of the waters for mining purposes was at a point below where they were used for agricultural purposes. By reason of these facts, which are established by the record and found by the court, the change of use could not in anywise injure the rights of subsequent appropriators above on the stream. Neither the change in the place of diversion nor the change in the use of the water from mining to agricultural uses affected the validity of these appropriations. (*Thomas* v. *Ball*, 66 Mont. 161, 213 Pac. 597; *Power* v. *Switzer*, 21 Mont. 523, 55 Pac. 32; see, also, *Mannix & Wilson* v. *Thrasher*, 95 Mont. 267, 26 Pac. (2d) 373.) The contention of the defendants is without merit.

The court found that the appropriation under the Gassert ditch for mining purposes was 300 inches, and that for the Wright ditch was 100 inches. It, however, found that, as to the 75 inches appropriated through the Wright ditch, at the time of the change in use from mining to agricultural, "beginning with the year 1874 plaintiff's predecessors in interest used 75 inches" of said water measured at the head of said ditch for the irrigation of lands then in their possession, and that 75 inches of water were necessary to successfully irrigate the lands

so irrigated by the plaintiff's predecessors in interest, "and ever since the year 1874 and during every year since that time to the date hereof, the plaintiff and their [her] predecessors in interest have during the irrigation season continuously used the aforesaid 75 inches of water for the irrigation of their lands and for domestic purposes." A similar finding with reference to the Gassert ditch was made, except that 200 inches were found to be the amount of the water used. The court further found that plaintiff had 389.3 acres which had been irrigated and were capable of irrigation from the existing ditches. It likewise found that plaintiff's ditches had a capacity in excess of the appropriations awarded and were in fact sufficient to carry the amount sought by her. The testimony in the record is that one inch to the acre was needed to irrigate plaintiff's lands.

The record in the case is voluminous. A brief résumé of the testimony touching on this question would unduly prolong the opinion. We have, however, carefully examined it and are unable to find where, for a long period of time following the change of use of the water from mining to agricultural purposes, any greater area of land was irrigated under the Wright ditch than 75 acres, and during the same period of time no greater area was irrigated under the Gassert ditch than 200 acres. Accordingly, the trial court correctly limited the plaintiff's appropriations to the amount of use made of the water after its change of use to agricultural purposes. In the case of *Jacobs* v. *City of Harlowton,* 66 Mont. 312, 213 Pac. 244, it is written: "The appropriator's need and facilities, if equal, measure the extent of his appropriation. (*Sayre* v. *Johnson,* 33 Mont. 15, 81 Pac. 389; *Bailey* v. *Tintinger,* supra [45 Mont. 154, 122 Pac. 575].) If his needs exceed the capacity of his means of diversion, then the capacity of his ditch measures the extent of the right. (*McDonald* v. *Lannen,* 19 Mont. 78, 47 Pac. 648; *Bailey* v. *Tintinger,* supra.)"

Doubtless at some time long after the change of use plaintiff or her predecessors in interest diverted water in excess of the amount awarded by the court, but the record is not clear as to

when this occurred; hence a finding as to such additional appropriation would be impossible. Furthermore, in view of the numerous rights adjudged subsequent to those awarded plaintiff but prior in point of time to any additional right to which plaintiff might be entitled, and in view of the testimony as to the amount of water normally flowing in Brown's Gulch, any additional later rights would be of no value.

The cause is remanded to the district court of Silver Bow county with directions to modify the findings of fact, conclusions of law and judgment in accordance with the views herein expressed; and when so modified, the judgment will stand affirmed. Each of the parties will pay his own costs on these appeals.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the above decision.

Rehearing denied December 30, 1935.