*533 ON PETITION FOR REHEARING
MR. JUSTICE SHEEHY
delivered the Opinion of the Court.
I.
The State of Montana, through the Attorney General, has petitioned for rehearing on the grounds: (1) that the stipulation entered into between the parties for submission of the issue contemplated further briefing and argument by the parties; and, (2) that certain “dictum” in the opinion will “render meaningless the volume aspect of final decrees as to direct flow irrigation rights not historically decreed or defined by volume.”
As decided in the original opinion of February 21, 1986, counsel for the various parties appeared and presented to this Court a stipulation that had been entered into by the parties for the purpose of resolving the several issues raised by the respective parties in this case.
In the stipulation of the parties presented on February 21, 1986, it is stated:
“12. Count I of the McDonald complaint requests the Montana Supreme Court declare unconstitutional the requirements of Title 85, Chapter 2, Part 2, MCA, requiring quantification of water rights by volume, as violating the recognition and confirmation of such water rights as they existed on the effective date of Article IX, Section 3, of the 1972 Constitution of Montana.
“13. To the extent that no controverted issues of fact are involved, the parties agree that the constitutionality of Title 85, Chapter 2, Part 2, MCA, and specifically Section 85-2-234(5)(b), MCA, which requires the decreeing of volume for pre-July 1, 1973 direct flow irrigation water rights that have not been historically decreed or defined in terms of volume, should be expeditiously decided by the Montana Supreme Court as the issue is pending in Cause No. 85-468. ’’(Emphasis added.)
The Attorney General and counsel for some of the parties in other cases which had been earlier consolidated with this cause now contend that paragraph 13 of the stipulation was intended solely to encourage the Court’s assumption of original jurisdiction over the issues presented in the McDonald complaint. They also contend that the signatories to the stipulation neither discussed nor intended is *534 suance of a decision by us on the merits without further adversarial briefing and argument by the involved parties.
Paragraph 13 is of the parties own doing. By its wording we were informed that we should expeditiously decide cause No. 85-468 “as the issue is pending.” This Court proceeded to do just that.
The issue of whether the statutory direction that water court decrees include a statement of volume was constitutional had been briefed in advance by petitioners in cause No. 85-468, and responded to by the water courts. It has always been the objective of this Court that these cases involving the determination of water rights by the water courts should be expeditiously handled so that the work of adjudication of all water rights in Montana would not be unduly impeded. It is not likely in view of that objective that this Court would have agreed to a further briefing schedule and further argument in any event.
II.
The Attorney General points to what is designated as “dictum” in the following sentence:
“. . . if in a rare case a beneficial use under a pre-1973 water irrigation right required a greater amount of water than the acre feet fixed in the decree, and such beneficial use was within the pre-1973 flow-rate appropriation as to the pattern of use and means of use, the amount required by beneficial use would control, though it exceeded the acre feet fixed in the decree ...”
McDonald v. State [220 Mont. 519,] 722 P.2d 598, 606, 43 St.Rep. 576, 585.
The asserted dictum relied on by the Attorney General is somewhat out of context. We set forth the full paragraph from which the sentence is lifted:
“We hold therefore that the Water Courts in rendering a preliminary decree under Section 85-2-231, MCA, or a final decree under Section 85-2-234, MCA, must as to each pre-1973 irrigation water right state the amount of water, rate and volume included in the right; but that the amount, rate and volume must at all times be subject to the requirement of beneficial use. Thus if in a rare case a beneficial use under a pre-1973 water irrigation right required a greater amount of water than the acre feet fixed in the decree, and such beneficial use was within the pre-1973 flow-rate appropriation as to the pattern of use and means of use, the amount required by a *535 beneficial use would control, though it exceeded the acre feet fixed in the decree. In like manner, if the beneficial use required a lesser amount than the acre feet fixed therein, the appropriator holds no title or right to the excess volume of water over and above the requirements of beneficial use.”

Id.

Albert W. Stone, appearing amicus curiae, has filed a brief in support of the State’s petition for rehearing. Amicus suggests that the language “the amount, rate and volume must at all times be subject to the requirement of beneficial use” imports a lack of finality, introduces uncertainty, a need for subsequent adjudications, and a result that the doctrine of res judicata is inapplicable to water court judgments.
The water courts themselves have filed an objection to the petition for rehearing, pointing out that the sole issue presented to the Court was whether the statutory requirement to quantify volume for all pre-July 1, 1973 direct irrigation rights was constitutional and that by the opinion, we have determined that such statutory requirement is not unconstitutional. Counsel for the petitioners in cause No.85-468 have filed objections to the petition for rehearing, asserting that this Court had jurisdiction to proceed as it did, and that such counsel had been instructed by clients not to spend any time objecting to the petition for rehearing. Counsel for Washington Water Power Company has not been instructed to take a position on a petition for rehearing.
Perry J. Moore, appearing amicus curiae, finds no such significance in the sentence objected to which would jeopardize the adjudication process.
The concerns expressed by the State and amicus in the petition for rehearing are unfounded. It is the duty of the water court under our opinion and under the law as it has always existed to determine the beneficial use to which the appropriator is entitled for pre-1973 irrigation water rights and based on such beneficial use, to include in the final decree the amount of water, rate and volume included in the respective water rights.
The issue that we have decided in this case is that the inclusion in water court decrees of a stated volume of water expressed in acre feet per year on a pre-1973 decree or appropriated water right is constitutionally permissible. We stated that the water courts, in view of the 1973 constitutional confirmation of then existing water rights, should accord such flow rates, volumes and *536 amounts which recognize the constitutionally protected extent of such rights.
Under our opinion, in no case could the amount of water for beneficial use exceed the amount constitutionally protected for the water right holder. In no case could the priorities of water rights be disturbed. As a corollary, in no case could the expression of volume in acre feet in the water court decrees delimit or burden the pre-1973 protected beneficial use under such water rights.
Our opinion does not reach to those water rights existing before 1973 which were expressed in terms of volume or acre feet. Our opinion deals with pre-1973 water rights which had not historically been expressed in terms of acre feet or volume. In so holding, we expressed nothing new or drastic in Montana law:
“The quantity of water which may be claimed lawfully under a prior appropriation is limited to that quantity within the amount claimed which the appropriator has needed, and which within a reasonable time he has actually and economically applied to a beneficial use . . . the principal of beneficial use [being of] paramount importance.”
Allen v. Petrick, et al. (1924), 69 Mont. 373, 376-77, 222 P. 451, 452.
“The extent of an appropriation of water is limited to beneficial use, and this irrespective of greater quantity attempted to be appropriated.”
Jacobs v. City of Harlowton (1923), 66 Mont. 312, 319, 213 P. 244, 245.
In Worden v. Alexander, et al. (1939), 108 Mont. 208, 213-14, 90 P.2d 160, 162, the sole question presented on appeal was the duty of the water awarded by decree in the lower court. This Court cited with approval a statement from Joerger v. Pacific Gas and Electric Co. (Cal.1929), 276 P. 1017, 1024:
“The question of what quantum of water is reasonably required for irrigation is necessary a complicated one, depending, as it does, upon many different conditions. The character of the soil, the area sought to be irrigated, the climatic conditions, the location, quality, and altitude of the lands, the kinds of crops to be raised, and the length of the irrigation season, must all be taken into consideration and weighed, as well as such other conditions as may be peculiar to each particular case. (Citing a case.) Under such circumstances, it is apparent that there can be no exact uniform rule for computing the duty or reasonable quantity of water for irrigation to be applied for all cases alike.”
*537 Indeed the water court seems to have anticipated a similar problem in the carry-over amount necessary in reservoirs. In its “Verification Manual,” page 200, Section 7, it is stated:
“Reservoirs. The existence of a reservoir as part of the irrigation system could mean a right to a greater volume of water than is needed in a year. Since the amount of water diverted for storage will vary each year, the water courts will not attempt to quantify the exact carry-over amount at this stage.
“Calculating the amount of carry-over is difficult and will turn on the physical factors and historical use patterns unique to each water right. As a result for irrigation claims, the decree will specify only that volume of water beneficially used in one year. If a party’s claimed volume exceeds that amount, the court acknowledges the right to continue reasonable historic carry-over water for such beneficial use in subsequent years. This acknowledgment by the courts will be stated in the findings of fact of the preliminary and final decree.
“Therefore, the right-holder with a reservoir will be able to divert and store as much as is beneficial with two limitations. First the stored amounts shall not exceed the volume historically stored for irrigation. Second, the amount carried over cannot exceed the historical passing of the reservoir.”
We examine the contentions of the Attorney General in the petition for rehearing in the light of the foregoing. It is first contended that the volume quantification requirement of Section 85-2-234(5)(b), MCA, is now mere surplusage under our opinion and that post-adjudication administration will be reduced to ad hoc decision-making over beneficial use and entitlement even when use in excess of the amount established in a final decree has admittedly occurred. This contention was answered above, where we stated that the amount of water claimed for beneficial use could in no event exceed the historical flow rate or pattern of use.
The petition further contends that the underlying objective of Section 85-2-234, MCA is the “final and definitive articulation of all existing rights in the use of water in Montana,” and that our dictum contravenes the basic statutory objective. To the contrary, our opinion directs the water courts to follow the mandate of Section 85-2-234 and Section 85-2-231, MCA, by expressing in its decrees “the amount of water, rate and volume, included in the right.”
The petition also contends that the dictum is inconsistent with prior decisions of the Court “which should recognize both the need *538 for and feasibility of setting precise limits on the quantity of particular irrigation uses.” We have answered that contention in the discussion foregoing.
Finally, the petition suggests that “on rehearing, the Court should therefore exclude from consideration the possibility that a decreed volume amount may improperly diminish an existing right.” That, of course, would be impossible in deciding this case. The possibility that a decreed volume amount might improperly diminish an existing right and so be unconstitutional was precisely the issue that brought Esther McDonald and her copetitioners to this court, and it is precisely the issue that the stipulation of all the parties asked us to determine. To uphold the constitutionality of water court decrees relating to pre-1973 irrigation water rights, we had first to determine that such expression of volumes would not diminish or burden such pre-1973 water rights. That issue was the meat of this case.
Having considered the issues raised by the petition for rehearing and the responses of various parties hereto, and having answered the same herein, we deny the petition for rehearing.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, WEBER, HUNT and GULBRANDSON and HON. LEONARD LANGEN, District Judge, sitting for MR. JUSTICE MORRISON, concur.