JUSTICE BAKER,
specially concurring.
¶70 I concur in the Court’s decision and write separately to emphasize several points.
¶71 I agree with the Court’s application of Bailey in holding that Pondera’s water rights are not measured by the stockholders’ actual historic water use. Bailey makes clear that a public service corporation’s water rights are limited by beneficial use — as are all water rights in Montana. Bailey, 45 Mont. at 178, 122 P. at 583 (concluding that a public service corporation “must have an intention to apply the water to a useful and beneficial purpose”). Bailey clarifies further that a public service corporation’s beneficial use is not measured by the acts of the shareholders, but rather, by the acts of the public service corporation. Bailey, 45 Mont. at 178, 122 P. at 583 (concluding that a public service corporation’s water right “cannot be made to depend for its existence in the first instance upon the voluntary acts of third parties”).
*117 ¶72 Bailey held unequivocally that, by express language in Montana’s constitution, appropriating water for sale is a beneficial use. Bailey, 45 Mont. at 175, 122 P. at 582. This principle remains true under the 1972 Constitution. Mont. Const. art IX, § 3. Provided that Pondera had a bona fide intention “to apply the water to a useful or beneficial purpose,” its appropriation was complete when it “fully complied with the statute and ha[d] its distributing system completed[, was] ready and willing to deliver water to users upon demand, and offer[ed] to do so.” Bailey, 45 Mont. at 177-78, 122 P. at 583. Unlike in Toohey v. Campbell, 24 Mont. 13, 18, 60 P. 396, 397 (1900), where the squatter Flannery did not show intent, and “could not possibly” have intended, to use water upon a larger area than the portion he actually cultivated, the state engineer’s report and Carey Land Board’s approval of the project are sufficient evidence of Pondera’s bona fide intention to support the Water Court’s decision to cap Pondera’s irrigated acreage at 72,000.
¶73 As the Water Court acknowledged and this Court points out, however, a water service entity’s right may be lost by nonuse or abandonment. Opinion, ¶ 34; Bailey, 45 Mont. at 178, 122 P. at 583. The Water Master recognized in his report, “The parties did not raise or brief the partial abandonment issue that 34 years of non-use of several thousand acre-feet suggests, along with possible late-priority use rights, but it could become an issue when Basin 41M is adjudicated.” That Pondera continues to provide water for sale by offering its shares of stock does not foreclose Curry or other objectors from attempting to show in the adjudication process that Pondera has lost its priority to sufficient water for irrigating 72,000 acres. At that point, evidence of the amount of water actually applied to irrigation certainly will be relevant. There also may be relevant evidence, not before us in this record, regarding how Pondera’s issued stock represents water it actually sold. But the Water Court correctly applied the law when it concluded that the actual historical use by irrigators was not the measure of Pondera’s right in the first instance. Bailey, 45 Mont. at 177, 122 P. at 583 (recognizing “the right of a public service corporation to make an appropriation independently of its present or future customers, and to have a definite time fixed at which its right attaches”).
¶74 The same principles hold true for defining the limits of Pondera’s service area. The Court properly declines to define the boundaries and size of the service area “in this Opinion and at this stage in the adjudication process.” Opinion, ¶ 50. Its conclusion that the service area should be determined in part by “the project as it was developed *118 and completed, and by the lands identified by the MCLB,” does not foreclose further arguments in the adjudication process concerning the size of Pondera’s place of use, or service area.
¶75 The evidence demonstrates that the Carey Land Board based its determination of the project’s boundaries on the “lands available for irrigation at the time the corporation’s system [was] completed.” Bailey, 45 Mont. at 176, 122 P. at 583. The Board’s determination, however, does not consider whether Pondera lost its right through “abandonment or nonuser for an unreasonable length of time.” Bailey, 45 Mont. at 178, 122 P. at 583. Furthermore, it is
indisputable that a water user who has been decreed the right to use a certain [amount] of water upon lands for which a beneficial use has been proven, cannot subsequently extend the use of that water to additional lands not under actual or contemplated irrigation at the time the right was decreed, to the injury of subsequent appropriators.
Quigley v. McIntosh, 110 Mont. 495, 505, 102 P.2d 1067, 1072 (1940). Although Quigley did not involve a public service corporation, the underlying principle that “place of diversion, or place or purpose of use, may be changed only ‘if others are not thereby injured,’ ” Quigley, 110 Mont. at 505, 102 P.2d at 1072 (quoting sec. 7095, RCM (1935)), applies to all appropriators. The Court’s holding on the Birch Creek Flats issue, Opinion, ¶¶ 54-55, reflects a similar rationale.
JUSTICE RICE and JUSTICE COTTER join in the concurring Opinion of JUSTICE BAKER.